650 A.2d 748

MEADOWBROOK CARTING COMPANY, INC., A NEW JERSEY CORPORATION, PLAINTIFF–APPELLANT, v. BOROUGH OF ISLAND HEIGHTS AND CONSOLIDATED WASTE SERVICES, INC., DEFENDANTS–RESPONDENTS.

Argued September 27, 1994—Decided December 7, 1994.

308

---

*David J. Haber* argued the cause for appellant.

*J. Mark Mutter* argued the cause for respondent Borough of Island Heights.

*Edward T. Feurey* argued the cause for respondent Consolidated Waste Services, Inc.

*Thomas S. Cosma* submitted a brief on behalf of *amicus curiae*, Construction Industry Advancement Program (*Connell, Foley & Geiser,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

The issue before us is whether a municipality can award a contract to a low bidder that fails to include with its bid a required consent of surety to provide a performance bond. In an unreported opinion, the Appellate Division affirmed the trial court's ruling that the omission of a consent of surety from the bid is a defect that can be temporarily waived and subsequently cured. We granted certification, 136 *N.J.* 30, 641 *A.*2d 1041 (1994), and now reverse.

I

The essential facts are undisputed. Defendant Borough of Island Heights (Borough) had a three-year contract with plaintiff, Meadowbrook Carting Company, Inc. (Meadowbrook), for the collection and removal of garbage, which was due to expire on February 1, 1993. Pursuant to the requirements of the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –49, the Borough advertised in November 1992 for bids on a new three-year contract commencing February 1, 1993. The advertisements notified potential bidders that they were required to submit a sealed bid in accordance with the specifications by January 29, 1993.

The bid specifications were consistent with various provisions of the Local Public Contracts Law. Pursuant to *N.J.S.A.* 40A:11–21, the bid specifications required "[b]id security in the form of a certified check, cashier's check or bid bond in the amount of 10% of the bid but not to exceed $20,000" to be submitted with the bid proposal. The specifications also required the party to whom the contract was awarded to furnish a "[performance] bond of any indemnity company authorized to do business in the State of New Jersey and satisfactory to the Borough for the full amount of the

bid, as accepted, and [to] pay all premiums due thereon." As required by *N.J.S.A.* 40A:11–22, the bid specifications mandated that bidders submit with their bid proposal a consent of surety guaranteeing that a bonding company will issue a performance bond in accordance with the bid specifications. The specifications defined a "consent of surety" as a "statement submitted with a bid, from a surety company duly authorized to do business in New Jersey and satisfactory to the governing body to the effect that said surety company will furnish a bond for the bidder, if awarded the contract." Each bidder was also required to provide a statement disclosing the identity of the owners of the bidding enterprise, and a Certificate of Insurance verifying that the bidder had in force insurance coverage with respect to the risks listed in the specifications and with the required amount of coverage.

The Borough reserved the right to reject a bid if the bidder failed to furnish any of the information or documents required by the specifications. The specifications further provided that an "award, if made, will be to the lowest responsible Bidder providing his bid complies in all respects with the requirements, as contained herein, of the Borough of Island Heights." However, the Borough "reserve[d] the right to waive, in its sole discretion, any minor informalities, defects or non-conformities in any bid documents submitted if it is determined to be in the best interest of the Borough of Island Heights to do so."

The bids were opened on January 29, 1993, and Meadowbrook and defendant Consolidated Waste Services, Inc. (Consolidated) were the only bidders for the proposed contract. Consolidated's bid for the three-year contract was $556,300, while Meadowbrook's bid was $657,405. Consolidated's bid, however, failed to include either a consent of surety or a Certificate of Insurance as required by the bid specifications. Consolidated's bid also did not contain an adequate ownership-disclosure statement. Meadowbrook's bid, however, complied in all respects with the bid specifications.

Consolidated delivered the required Certificate of Insurance to Borough officials approximately one-half hour after the opening of

bids. Four days later, on February 2, 1993, Consolidated provided the Borough with a consent of surety in the form of a letter from Acstar Insurance Company (Acstar) that stated: "In the event that Consolidated Waste Services, Inc. should be awarded the contract for the Borough of Island Heights project, ACSTAR Insurance Company as Surety, will furnish a Payment and Performance Bond providing Consolidated Waste Services, Inc. continues to meet ACSTAR Insurance Company's underwriting and collateral requirements." Consolidated furnished to the Borough an ownership-disclosure statement complying with the specifications on February 8, 1993.

Although Meadowbrook objected to the award of the contract to Consolidated because of its failure to provide a consent of surety and an adequate ownership-disclosure statement with its bid, the Borough's governing body elected to waive those deficiencies and adopted a resolution awarding the contract to Consolidated.

Meadowbrook instituted this action challenging the validity of the resolution awarding the contract to Consolidated and seeking to compel the Borough to award the contract to Meadowbrook. The Law Division dismissed Meadowbrook's complaint, determining that the submission of the incomplete ownership-disclosure statement was a nonmaterial defect that had been cured, and that Consolidated's failure to submit a consent of surety with its bid had been cured by the furnishing of a consent of surety four days after the bid opening. The Law Division also concluded that the conditional terms of the consent of surety eventually furnished were commercially reasonable and therefore complied with the specifications.

On appeal, Meadowbrook again challenged Consolidated's failure to submit the consent of surety with its bid, and its submission of the inadequate disclosure statement. The Appellate Division affirmed substantially for the reasons stated by the trial court. In its petition for certification, Meadowbrook raises only the issue of Consolidated's failure to submit a consent of surety with its bid.

## II

The competitive-bidding process is incorporated in the Local Public Contracts Law. *N.J.S.A.* 40A:11–3 and –4 require that municipalities and counties advertise for bids on public contracts that exceed the statutory threshold amount. The purpose of the Local Public Contracts Law is to "secure for the public the benefits of unfettered competition." *Terminal Constr. Corp. v. Atlantic County Sewerage Auth.*, 67 *N.J.* 403, 410, 341 *A*.2d 327 (1975); *see also Township of River Vale v. R.J. Longo Constr. Co.*, 127 *N.J.Super.* 207, 215, 316 *A*.2d 737 (Law Div.1974) (stating that purpose of competitive bidding for local public contracts is not protection of individual interests of bidders, but rather advancement of public interest in securing most economical result by inviting competition in which all bidders are placed on equal basis). The statutes authorizing competitive bidding accomplish that purpose by promoting competition on an equal footing and guarding against "favoritism, improvidence, extravagance and corruption." *Township of Hillside v. Sternin*, 25 *N.J.* 317, 322, 136 *A*.2d 265 (1957); *see also L. Pucillo & Sons, Inc. v. Mayor of New Milford*, 73 *N.J.* 349, 356, 375 *A*.2d 602 (1977) (*L. Pucillo*) (stating that purpose of act is " 'to guard against favoritism, improvidence, extravagance and corruption' ") (quoting *Terminal Constr. Corp.*, *supra*, 67 *N.J.* at 410, 341 *A*.2d 327).

Accordingly, the statutory rule in New Jersey is that publicly advertised contracts must be awarded to "the lowest responsible bidder." *N.J.S.A.* 40A:11–6.1; *see also Hillside, supra*, 25 *N.J.* at 323, 326, 136 *A*.2d 265 (construing predecessor to Local Public Contracts Law). This Court has interpreted that requirement to mean that the contract must be awarded not simply to the lowest bidder, but rather to the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications. *Hillside, supra*, 25 *N.J.* at 324, 136 *A*.2d 265 ("The significance of the expression 'lowest bidder' is not restricted to the amount of the bid; it means also that the bid conforms with the specifications."); *see also William A. Carey &*

*Co. v. Borough of Fair Lawn,* 37 *N.J.Super.* 159, 165, 117 *A.*2d 140 (App.Div.1955) ("The lowest bidder, within the contemplation of the statute [the predecessor of *N.J.S.A.* 40A:11–1 to –49][ ] is the one whose bid is not only the lowest for the work to be done but also conforms to the requirements of the notice to bidders.").

■ Strict compliance is required, and a municipality generally is without discretion to accept a defective bid. *See L. Pucillo, supra,* 73 *N.J.* at 356, 375 *A.*2d 602; *426 Bloomfield Ave. Corp. v. City of Newark,* 262 *N.J.Super.* 384, 387, 621 *A.*2d 59 (App.Div. 1993). "The long-standing judicial policy in construing cases governed by the Local Public Contracts Law * * * has been to curtail the discretion of local authorities by demanding strict compliance with public bidding guidelines." *L. Pucillo, supra,* 73 *N.J.* at 356, 375 *A.*2d 602. This Court has adopted that approach largely as a prophylactic measure. *Ibid.* As Justice Francis observed in *Hillside, supra,* "In this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way." 25 *N.J.* at 326, 136 *A.*2d 265.

■ As a result, all bids must comply with the terms imposed, and any material departure invalidates a nonconforming bid as well as any contract based upon it. *Id.* at 323, 136 *A.*2d 265. "It is firmly established in New Jersey that material conditions contained in bidding specifications may not be waived." *Terminal Constr. Corp., supra,* 67 *N.J.* at 411, 341 *A.*2d 327 (citing *Hillside, supra,* 25 *N.J.* at 324, 136 *A.*2d 265). However, minor or inconsequential discrepancies and technical omissions can be the subject of waiver. *Ibid; Hillside, supra,* 25 *N.J.* at 324, 136 *A.*2d 265. That limitation on the doctrine of strict compliance was acknowledged in *Terminal Construction Corp., supra:*

> Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications [that] by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extrava-

gance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions [that] may not under any circumstances be waived.

[67 *N.J.* at 412, 341 *A.*2d 327.]

In *River Vale, supra,* 127 *N.J.Super.* at 216, 316 *A.*2d 737, Judge Pressler set forth a two-part test for determining "whether a specific noncompliance constitutes a substantial and hence non-waivable irregularity." As the Appellate Division observed in *L. Pucillo & Sons, Inc. v. Township of Belleville,* 249 *N.J.Super.* 536, 547, 592 *A.*2d 1218, *certif. denied,* 127 *N.J.* 551, 606 *A.*2d 364 (1991) (*Pucillo* ), "the test of materiality has been reduced to [a] * * * two-prong analysis." It requires a determination

"[']first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.[']"

[*Ibid.* (quoting *Palamar Constr., Inc. v. Township of Pennsauken,* 196 *N.J.Super.* 241, 255, 482 *A.*2d 174 (App.Div.1983) (quoting *River Vale, supra,* 127 *N.J.Super.* at 216, 316 *A.*2d 737)).]

Application of the *River Vale* criteria to the question whether a consent-of-surety requirement can be waived requires that we focus on the function of the consent of surety in the public-bidding process. The specifications state that the purpose of a performance bond from a surety is to guaranty that the contractor will "execute the work in accordance with the terms of the specifications and contract." If the advertisements or specifications for a bid subject to the Local Public Contracts Law require a surety-company bond, then *N.J.S.A.* 40A:11–22 mandates a consent of surety:

When a surety company bond is required in the advertisement or specifications for a contract or agreement, every contracting unit shall require from any bidder submitting a bid in accordance with plans, specifications and advertisements, as provided for by law, a certificate from a surety company stating that it will provide the contractor with a bond in such sum as is required in the advertisement or in the specifications.

This certificate from a surety company, referred to as a consent of surety, assures the public entity that the surety will provide the performance bond if the contract is awarded to and signed by the bidder. *See L. Pucillo, supra,* 73 *N.J.* at 353, 375 *A.*2d 602. The significance of a consent of surety is that it provides the local government with some assurance at the time of the bid submission that the low bidder will have the capacity to perform the contract and to supply the necessary bonds. *See Albanese v. Machetto,* 7 *N.J.Super.* 188, 191, 72 *A.*2d 521 (App.Div.1950) (holding that low bidder's failure to comply with specifications requiring consent of surety to be submitted with proposal constituted material defect because omission concerned bidder's ability to carry out obligations under contract to remove garbage); *DeSapio Constr., Inc. v. Township of Clinton,* 276 *N.J.Super.* 216, 221, 647 *A.*2d 878 (Law Div.1994) (determining that failure of low bidder to include consent of surety with bid deprived municipality of assurance that contract would be fulfilled). Moreover, our courts have held that the ability to secure a proper consent of surety is a consideration that could affect bid calculations. *See, e.g., Pucillo, supra,* 249 *N.J.Super.* at 547, 592 *A.*2d 1218 (stating that failure to submit consent of surety threatens policies underlying competitive-bidding statutes); *DeSapio Constr., supra,* 276 *N.J.Super.* at 221–22, 647 *A.*2d 878 (holding that conditional consent of surety was material defect because it provided bidder with a competitive advantage over other bidders); *cf. George Harms Constr. Co. v. Ocean County Sewerage Auth.,* 163 *N.J.Super.* 107, 110, 394 *A.*2d 360 (App.Div.) (holding that "requirement that the surety be licensed to do business in this State was a material condition of the instructions to bidders and not a mere technicality"), *certif. denied,* 78 *N.J.* 410, 396 *A.*2d 597 (1978). *But see Prismatic Dev. Corp. v. Somerset County Bd. of Chosen Freeholders,* 236 *N.J.Super.* 158, 161, 165, 564 *A.*2d 1208 (App.Div.) (observing, in *dictum,* that consent of surety was waivable), *certif. denied,* 118 *N.J.* 205, 570 *A.*2d 965 (1989); *Murdock Contracting Co. v. Borough of Verona,* 47 *N.J.Super.* 102, 108–09, 135 *A.*2d 352 (Law Div.1957)

(holding that failure to submit consent of surety was not substantial defect affecting competitive bidding).

In *Pucillo, supra*, the Appellate Division concluded that the municipality could waive neither the requirement that the consent of surety guarantee a performance bond in the full amount of the bid nor the requirement that the performance bond be posted for the full amount of the bid. 249 *N.J.Super.* at 547, 592 *A.*2d 1218. There, the plaintiff, a potential bidder on a contract for scavenger services with the Township of Belleville, filed suit challenging the Township's award of the contract to the defendant Dominick Pucillo Disposal, Inc. and seeking a declaration that the award was void, a judgment compelling the readvertisement of the proposals for the scavenger contract, and an order restraining that defendant from continued performance of the contract. *Id.* at 538, 592 *A.*2d 1218. The plaintiff claimed that the defects in Dominick's bid—the failure to include a consent of surety and performance bond for the proper amount—were material and not subject to waiver, and alleged that it had been discouraged from bidding by the very requirements with which Pucillo had failed to comply. *Id.* at 542, 592 *A.*2d 1218. Applying the two-prong test enunciated in *River Vale, supra*, 127 *N.J.Super.* at 216, 316 *A.*2d 737, the court held that the Township could not waive the security requirements set forth in its bid specifications, reasoning that other bidders may have been deterred by the surety requirements in the specifications. *Pucillo, supra*, 249 *N.J.Super.* at 547, 592 *A.*2d 1218 (citing *L. Pucillo, supra*, 73 *N.J.* at 357–58, 375 *A.*2d 602) ("This considerable outlay or funds [that is, a bid bond in the amount of ten percent of the bid price for a five-year contract], *coupled with the expense and difficulty of securing a consent of surety for a performance bond* on the five-year contract, may have been beyond the ability of some companies which would have been fully capable of discharging the obligations of a shorter contract.") (emphasis supplied).

Likewise, *Albanese, supra*, involved the low bidder's failure to submit a consent of surety verifying that the bonding company

would provide the bidder with the performance bond required by the contract should the bidder be awarded the contract. 7 *N.J.Super.* at 190, 72 *A.*2d 521. In that case, the bidder did not furnish the prescribed consent of surety, furnishing instead its own bond with an indemnity company as a surety thereon. *Ibid.* Moreover, the bidder did not submit satisfactory proof of ownership or leases for certain equipment. *Ibid.* Acknowledging that the municipality was without authority to waive any substantial discrepancy between the specifications and the bids, the court concluded that those two defects were substantial because they affected materially the bidder's ability to perform the contract and therefore could not be waived. *Id.* at 191, 72 *A.*2d 521.

Similarly, in *DeSapio Construction, Inc., supra,* 276 *N.J.Super.* at 220, 222, 647 *A.*2d 878, the court held that a conditional consent of surety was a material defect that could be neither waived nor cured. There, pursuant to *N.J.S.A.* 40A:11–22, the bid specifications for a public construction contract for the Township of Clinton required that all bidders submit a consent of surety. *Id.* at 218, 647 *A.*2d 878. The plaintiff, the low bidder, submitted a letter from a surety that stated it "would not anticipate any difficulty providing bonds [for the plaintiff] on the above captioned project, subject to execution of a contract satisfactory to [the plaintiff and surety]." *Id.* at 219, 647 *A.*2d 878. After submitting its bid, the plaintiff submitted a supplemental letter from the surety that certified that the surety would provide the performance bonds to the plaintiff "subject only to execution of the contract." *Ibid.* After reviewing the bids, the Township's attorneys advised the Township that the plaintiff's bid was materially defective. The plaintiff then sued for a declaratory judgment. *Ibid.*

First, the Law Division determined that the letter submitted with the bid was defective because it was not an unconditional undertaking to provide the performance bond as required by *N.J.S.A.* 40A:11–22. *Id.* at 220, 647 *A.*2d 878. In addition, the court held that the defect in the consent of surety was material, on the basis of the two-prong test advanced in *River Vale, supra.* *Id.*

at 221, 647 *A.*2d 878. The Township had no assurance that the contract would be fulfilled because no guaranty existed on the date the bids were opened that the surety would provide the performance bond for the duration of the contract. *Ibid.* Moreover, that deviation gave the plaintiff an advantage over other bidders because the plaintiff could avoid its obligation to accept the bid by not obtaining the performance bond. *Id.* at 222, 647 *A.*2d 878. Furthermore, the court emphasized the overriding goal of insuring the integrity of the bidding process, stating that "[s]trict standards must be maintained so that there is no opportunity for unfettered discretion or favoritism in the public bidding process." *Ibid.*

However, our cases have been somewhat inconsistent in articulating the difference between a material defect in a bid that cannot be waived and an immaterial defect that can be waived. *Palamar Constr., supra,* 196 *N.J.Super.* at 254, 482 *A.*2d 174. In *Murdock Contracting Co., supra,* 47 *N.J.Super.* at 108–09, 135 *A.*2d 352, the court held that the failure to submit a consent of surety was not a substantial defect but only a "nominal irregularity which was without unfair effect either to the municipal functions of Verona or to the fairness of competitive bidding." There, the plaintiff, a bidder for a contract to erect a garage and storage building, filed suit demanding that the Borough of Verona accept its bid and enter into a contract for the construction. *Id.* at 103, 135 *A.*2d 352. The Borough and Leone, the next low bidder on the contract, contended that the plaintiff had not complied with the specifications in that it had failed to include proof of ability to furnish a performance bond. *Id.* at 104, 135 *A.*2d 352. The court found that the defect did not involve unfair competitive bidding and could be waived. *Id.* at 106–08, 135 *A.*2d 352.

Similarly, in *Prismatic Development Corp., supra,* the Appellate Division, in *dictum,* observed that a consent of surety was waivable. 236 *N.J.Super.* at 160, 161, 165, 564 *A.*2d 1208. In that case an unsuccessful bidder on a public construction project brought an action to restrain the award of a contract to the low bidder. *Id.* at

159–61, 564 *A*.2d 1208. Three issues were presented: (1) whether a prospective prime contractor for a single overall contract could name alternative specialty subcontractors when bidding pursuant to *N.J.S.A.* 40A:11–16; (2) whether the failure to include a consent of surety was material or nonwaivable; and (3) whether the failure to include a non-collusion affidavit was material. *Id.* at 160, 564 *A*.2d 1208. The court decided that in view of its conclusion that the subcontractors must be named definitively in the bid, the issues involving the consent of surety and non-collusion affidavit need not be addressed. *Id.* at 165, 564 *A*.2d 1208. Nonetheless, "in light of the possibility of further litigation, [the Appellate Division] note[d] [its] agreement with the trial judge['s]" ruling that a bidder's failure to include a consent of surety and non-collusion affidavit at the time the bid was submitted were either "waiveable and/or nonmaterial." *Id.* at 161, 165, 564 *A*.2d 1208.

### III

■ The Borough and Consolidated contend that the omission of the consent of surety was immaterial and could be temporarily waived and subsequently cured. They assert that the effect of a waiver would not be to deprive the Borough of its assurance that the contract will be entered into, performed, and guaranteed in accordance with the specifications, noting that if Consolidated were to refuse to sign the contract, the Borough would retain the bid security. The trial court agreed, noting as well that the subsequent letter from Acstar "provides the municipality with the appropriate assurances that the contract would be entered into and it would be performed in accordance with the terms of the contract."

We hold that Consolidated's failure to include a consent of surety with its bid proposal is a material defect that can be neither waived nor cured. Accordingly, to the extent that *Prismatic Development Corp., supra,* 236 *N.J.Super.* at 165, 564 *A*.2d 1208, and *Murdock Contracting Co., supra,* 47 *N.J.Super.* at 106–09, 135 *A*.2d 352, conflict with our holding, they are overruled.

■ A consent of surety is a direct undertaking by the bonding company, enforceable by the municipality. Its purpose is to provide a guarantee to the municipality, at the time of the submission of bids, that if the bidder were to be awarded the contract, the surety would issue the required performance bond. The Borough's bid specifications required that "[t]he party to whom this contract shall be awarded shall furnish a bond of any indemnity company * * * for the full amount of the bid." The bid specifications also required, pursuant to *N.J.S.A.* 40A:11–22, that all bidders include a consent of surety with their submission.

To permit waiver of the consent-of-surety requirement would undermine the stability of the public-bidding process. For example, if a low bidder that had failed to submit a consent of surety decided it no longer sought the contract because it had determined that its bid was too low, that bidder could decline to obtain the consent of surety and the performance bond. Without a performance bond, the bidder cannot be required to enter into and perform the contract. *See Hillside, supra,* 25 *N.J.* at 328, 136 *A.2d* 265 (holding that Township could not waive low bidder's failure to provide required bid security to validate bid and hold bidder to its terms). In *DeSapio Construction, Inc., supra,* the court noted that the low bidder that had failed to include an unconditional consent of surety with its bid proposal had acquired a competitive advantage because even if it were awarded the contract, it "could unilaterally 'cancel' the award by failing to obtain" the consent of surety. 276 *N.J.Super.* at 222, 647 *A.2d* 878. Moreover, that the municipality can retain the amount of the bid bond does not necessarily assure that the low bidder will enter into or perform the contract. If the low bidder determines that its bid is too low and that its prospective loss on the contract exceeds the amount of its bid bond, that low bidder may decide to forfeit its security rather than incur a greater loss by performing the contract.

In addition, a bidder who fails to submit a consent of surety with its bid proposal may be unable to obtain a consent of surety

or a performance bond if it is later awarded the contract. In *Albanese v. Machetto*, 5 *N.J.Super.* 605, 607, 68 *A.2d* 659 (Law Div.1949), *aff'd*, 7 *N.J.Super.* 188, 72 *A.2d* 521 (App.Div.1950), the low bidder failed to submit the required consent of surety with his bid. The court held that the specifications "patently contemplated as a prerequisite to consideration of the bid that the municipality have assurance that the bidder if awarded the contract could supply a performance bond in the amount of the contract." *Id.* at 608, 68 *A.2d* 659. The specifications' " 'obvious purpose was to compel the bidder to establish, before the award was made, his ability to perform the contract.' " *Ibid.* (quoting *Tufano v. Borough of Cliffside Park*, 110 *N.J.L.* 370, 373, 165 *A.* 628 (Sup.Ct. 1932)).

The Legislature obviously regarded the financial capacity of a bidder to be a material and substantial consideration in the determination of the lowest responsible bidder, as evidenced by its adopting separate provisions within the Local Public Contracts Law to provide municipalities with a means of requiring prospective bidders to furnish in advance a statement of their financial capacity. *N.J.S.A.* 40A:11–20 to –22; *Hillside, supra,* 25 *N.J.* at 323, 136 *A.2d* 265; *see William A. Carey & Co., supra,* 37 *N.J.Super.* at 166, 117 *A.2d* 140 ("It is an appropriate object of the questionnaire and specifications that the bid furnish assurance of the possession by the bidder *at the time of submission of the bid* of the physical as well as financial resources for performance of the contract, particularly where it is so closely related to the public health and welfare as in the case of garbage collection."). Moreover, the requirement that a consent of surety be submitted with the bid proposal should be understood to enhance the municipality's ability to determine the lowest responsible bidder, thereby minimizing the risk of default by the successful bidder. *See Hillside, supra,* 25 *N.J.* at 323, 136 *A.2d* 265; *William A. Carey & Co., supra,* 37 *N.J.Super.* at 166, 117 *A.2d* 140.

We are also persuaded that Consolidated's failure to include a consent of surety with its bid submission had the capacity to affect

the fairness of the bidding process. "This is so even though it is evident that in fact there was no corruption or any actual adverse effect upon the bidding process." *Terminal Constr. Corp., supra,* 67 *N.J.* at 410, 341 *A.*2d 327; *see, e.g., Pucillo, supra,* 249 *N.J.Super.* at 547, 592 *A.*2d 1218 (stating that failure to include consent of surety with bid submission was material defect because "other bidders may have been deterred by the surety requirement in the original specifications"); *George Harms Constr. Co., supra,* 163 *N.J.Super.* at 109, 394 *A.*2d 360 (holding that failure to submit consent of surety from a surety licensed in New Jersey was a material defect because it had capacity to affect competitive-bidding process); *DeSapio Constr., supra,* 276 *N.J.Super.* at 221–22, 647 *A.*2d 878 (holding that conditional consent of surety was a material defect because that deviation gave that bidder a competitive advantage since it was free to cancel bid award by not obtaining performance bond); *Albanese, supra,* 5 *N.J.Super.* at 608, 68 *A.*2d 659 (" 'To permit one bidder to ignore the[ ] requirement[ ] [of submitting a consent of surety with its bid] would give [it] an advantage over the others, and to permit him to supply the deficiency later, and after the bids were opened, would open the door to fraud and favoritism, and defeat the statutory purpose of protection to the taxpayer.' " (quoting *Tufano, supra,* 110 *N.J.L.* at 373, 165 *A.* 628)).

Our specific concern is that the requirement of a consent of surety " 'may have deterred others from bidding who would have bid had they known that [that] condition[ ] would be waived.' " *L. Pucillo, supra,* 73 *N.J.* at 358, 375 *A.*2d 602 (quoting *Case v. Inhabitants of Trenton,* 76 *N.J.L.* 696, 700, 74 *A.* 672 (E. & A.1909)). The specifications in *L. Pucillo* required the bidder to bid on contracts of one-, two-, three-, and five-years duration. 73 *N.J.* at 353, 375 *A.*2d 602. The defendant failed to submit a proposal for the five-year contract and to provide the requisite bid bond and consent of surety. *Id.* at 354, 375 *A.*2d 602. We held that the condition that a bid be submitted on a five-year contract was material because the defendant's deviation provided him with "a palpable economic benefit [that] gave him an advantage over his

competitors and undermined the necessary common standard of competition." *Id.* at 358, 375 *A.*2d 602. Significantly, we acknowledged that although the disparity between bids suggested that the failure to bid on the five-year contract and procure the consent of surety might not have affected the competitive-bidding process, we were not prepared to rule out the possibility that other bids would have been submitted if it were known that the failure to bid on and bond the five-year contract were subject to waiver. *Id.* at 357–58, 375 *A.*2d 602. The "considerable outlay of funds, coupled with the expense and difficulty of securing a consent of surety for a performance bond on the five-year contract, may have been beyond the ability of some companies which would have been fully capable of discharging the obligations of a shorter contract." *Id.* at 357–58, 375 *A.*2d 602.

Other considerations also persuade us that to permit waiver of a consent-of-surety requirement could affect the fairness of the competitive-bidding process. A bidder's ability to perform a project might improve between the time the bids are submitted and the time the bids are awarded, with the result that a surety initially unwilling to supply a bond might be willing to do so later. Furthermore, a bidder that is determined to be the low bidder on a project may be willing to invest additional capital and take other steps necessary to obtain the required consent of surety, which it would not have done without the assurance that it would then be awarded the contract. Moreover, by permitting a waiver of the consent-of-surety requirement, those bidders with limited bonding capacity would not need to deplete that capacity by obtaining the consent of surety, which would allow them simultaneously to submit bids for other contracts.

Courts should not casually "transform the mandatory requirement in these specifications [of including a consent of surety at the time the bid is submitted] into a polite request." *L. Pucillo, supra,* 73 *N.J.* at 356, 375 *A.*2d 602. Public bidders should regard the specifications as requiring the submission of bids on the terms specified. *See ibid.* "Awarding the contract to one who fail[s] to

submit bids on all terms necessarily create[s] an inequality in the bidding and an opportunity for favoritism." *Ibid.* As Justice Francis stated in *Hillside, supra:* "Every element [that] enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant to follow or to disregard and thus to estimate his bid on a basis different from that afforded the other contenders." 25 *N.J.* at 322–23, 136 *A.*2d 265.

We recognize that to prohibit the waiver of the consent-of-surety requirement occasionally may result in additional cost to the public, but we have no doubt that the overriding interest in insuring the integrity of the bidding process is more important than the isolated savings at stake. If an exception were made, its effect would be to encourage bidders not to provide consents of surety, a result contrary to the purpose of the Local Public Contracts Law.

■ Because we find that the Borough's waiver of the consent-of-surety requirement was beyond its authority, the contract entered into between Consolidated and the Borough is void. *See L. Pucillo, supra,* 73 *N.J.* at 358–59, 375 *A.*2d 602. In its specifications, the Borough has reserved the right to reject any bid "for any * * * justifiable reason which in the judgment of the governing body requires the governing body to reject all Bid Proposals in the best interest of the Borough of Island Heights." We note that Meadowbrook's bid was more than $100,000—or approximately eighteen percent—higher than Consolidated's. Under the circumstances, we hold that all bids are to be rejected and the contract readvertised. *See Gannett Outdoor v. City of Atlantic City,* 249 *N.J.Super.* 217, 220–22, 592 *A.*2d 276 (App.Div.1991) (sustaining rejection of all bids and stating that municipality should not be required to accept bid if there is only one bid, or where it considers price too high); *Marvec Constr. Corp. v. Township of Belleville,* 254 *N.J.Super.* 282, 293–94, 603 *A.*2d 184 (Law Div.1992) (holding that municipality that has reserved right to reject all public bids can do so when it believes that rebidding

would probably bring a lower price). A condition of our invalidation of Consolidated's contract is that Consolidated continue during the rebidding process to provide garbage-collection services for the Borough under the terms of the present contract. Its compensation for past and future services shall be paid on a *per diem* basis in accordance with the contractual rate. *See L. Pucillo, supra,* 73 *N.J.* at 359, 375 *A.*2d 602.

The Mayor and Council of the Borough shall advertise for new bids to be received within sixty days. The Borough, in its discretion, may solicit proposals for any term up to the statutory maximum of five years. *N.J.S.A.* 40A:11–15(3); *see L. Pucillo, supra,* 73 *N.J.* at 359, 375 *A.*2d 602. The performance of the new contract should begin promptly after the contract has been awarded.

Judgment reversed.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.