786 A.2d 895

R.C.G. CONSTRUCTION COMPANY, INC., A NEW JERSEY CORPO-RATION, PLAINTIFF–RESPONDENT AND CROSS–APPEL-LANT, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF KEYPORT; THE BOROUGH OF KEYPORT, A MUNICIPAL CORPORATION AND CORPORATE BODY POLITIC, DEFEN-DANTS–APPELLANTS AND CROSS–RESPONDENTS, AND A & K EXCAVATING, L.L.C., A NEW JERSEY CORPORATION, AND EMARA CONSTRUCTION CO., A NEW JERSEY CORPORA-TION, AND MAHARAJ CONSTRUCTION CO., INC., A NEW JERSEY CORPORATION, DEFENDANTS.

MAHARAJ CONSTRUCTION CO., INC., PLAINTIFF–RESPON-DENT, v. THE BOROUGH OF KEYPORT, DEFENDANT, AND A & K EXCAVATING, L.L.C., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 5, 2001—Decided December 20, 2001.

Before Judges HAVEY, BRAITHWAITE and COBURN.

*Raymond Springberg* argued the cause for appellant A & K Excavating, L.L.C. (*Mr. Springberg*, on the brief).

*Gordon N. Litwin* argued the cause for appellants/cross-respondents Mayor and Council of the Borough of Keyport and the Borough of Keyport (*Ansell, Zaro, Grimm & Aaron*, attorneys; *Mr. Litwin*, of counsel; *Andrew J. Provence*, on the brief).

*Thomas Daniel McCloskey* argued the cause for respondent/cross-appellant R.C.G. Construction Company, Inc. (*Greenbaum, Row, Smith, Ravin, Davis & Himmel*, attorneys; *Mr. McCloskey*, of counsel and on the brief).

*Richard M. Baron* argued the cause for respondent (Maharaj Construction, Inc. *Mr. Baron*, on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

This is a public bidding case.[1] The Public Works Contractor Registration Act (PWCRA), *L.* 1999, c. 238, became effective on

---

[1] We have consolidated A–4231–00T5 and A–4294–00T5 for purposes of this opinion.

April 11, 2000. *N.J.S.A.* 34:11–56.48 to –57. It provides that "no contractor shall bid on or engage in any contract for public work ... unless the contractor is registered pursuant to this act." *N.J.S.A.* 34:11–56.51 (§ 56.51). The definition of "[c]ontractor" includes "any subcontractor or lower tier subcontractor of a contractor as defined herein...." *N.J.S.A.* 34:11–56.50.

In this case, the trial court interpreted § 56.51 as requiring the contractor and all subcontractors who will work on the job to be registered before the contractor submits its bid proposal to the public entity. The court therefore vacated an award of a contract by defendant Borough of Keyport to defendant A & K Excavating, L.L.C. (A & K) because A & K's steel structure subcontractor, D.L. Zagata, Inc. (Zagata), was not registered when A & K submitted its bid. We reverse. We hold that under § 56.51, a subcontractor is required to register before it begins performing work on the project, not before the general contractor submits its bid proposal. The matter is remanded with direction that Keyport award the contract to A & K.

On August 1, 2000, the Borough of Keyport solicited public bids for the construction of a new municipal building complex. The bid advertisement provided that "[b]idders are required to comply with the requirements of ... P.L.1999, c. 238, 'The Public Works Contractor Registration Act.' " *N.J.S.A.* 34:11–56.48 to –57. The bid instructions defined "[p]ublic [w]orks" as including "any subcontractor or lower tier subcontractor as defined herein."

Seventeen bids were received, ranging from a bid price of $3,010,000 to $3,898,000. The ascending order of the bidders [2] who are participating in this appeal, and the amount of their

---

[2] Emara Construction Company, Inc. bid $3,070,000. The trial court concluded that Emara's bid was invalid because Emara had not furnished proof of registration by two of its subcontractors before Emara's bid. However, Emara is not a party to this appeal.

respective bid, is as follows:

1. A & K Excavating, LLC (A & K)  ·$3,010,000
2. Maharaj Construction, Inc.
   (Maharaj)  $3,082,000
3. R.C.G. Construction Co., Inc. (RCG)  $3,127,000

RCG filed written objections with the Borough, alleging that it submitted the only fully compliant bid because, although A & K was registered under the PWCRA at the time it presented its bid proposal, its steel subcontractor, Zagata, was not. RCG also claimed that A & K's failure to include its bid price of $3,010,000 in its corporate resolution was a material defect, and that Maharaj's bid was invalid because necessary information was not contained in its corporate resolution.

On December 19, 2000, Keyport awarded the contract to A & K. In its resolution, the Borough stated that: (1) the registration of subcontractors was not expressly required by the bid specifications and that, in fact, Zagata's registration certificate had been furnished to the Borough prior to its award of the contract to A & K; and (2) A & K's failure to include its bid price in its corporate resolution was a waivable, nonmaterial defect.

In vacating the award of the contract to A & K, the trial court concluded that § 56.51 was clear and unambiguous because it states that "[n]o contractor shall bid on or engage in any contract for public work. . . ." It reasoned that since "contractor" by definition includes a "subcontractor" under *N.J.S.A.* 34:11–56.50, the Legislature intended that both contractors and subcontractors "shall" be registered before the contractor bids on the public works project.

I

In determining legislative intent, the first step is to examine the language of the statute. *Higgins v. Pascack Valley Hosp.*, 158 *N.J.* 404, 418, 730 *A.2d* 327 (1999). "If the statutory language is clear, that language ordinarily governs." *Ibid; see also Burns v. Belafsky*, 166 *N.J.* 466, 473, 766 *A.2d* 1095 (2001) (same). However, if the language is ambiguous, we must interpret the statute in light of the Legislature's intent, looking if

necessary to extrinsic evidence including legislative history and committee reports. *Burns, supra,* 166 *N.J.* at 473, 766 *A.*2d 1095; *State v. Hoffman,* 149 *N.J.* 564, 578, 695 *A.*2d 236 (1997). However, application of suggestive tools "should not lead to an interpretation that contradicts a common sense understanding of the statutory language." *State, Tp. of Pennsauken v. Schad,* 160 *N.J.* 156, 173, 733 *A.*2d 1159 (1999). Ultimately, the court must seek to effectuate "the fundamental purpose for which the legislation was enacted." *N.J. Builders, Owners & Managers Ass'n v. Blair,* 60 *N.J.* 330, 338, 288 *A.*2d 855 (1972).

Here, it is clear that the mandate of § 56.51 that "[n]o contractor shall bid on ... a contract for public works" without first registering requires the contractor to be registered before it submits its bid package. The confusion arises because the Legislature used the disjunctive "or" in the phrase "bid on *or* engage in any contract for public work...." *Ibid.* (emphasis added). Zagata, A & K's structural steel contractor, did not "bid" on the Keyport project. In fact, the parties agree that as a general rule, subcontractors "engage in," but do not "bid" on public work projects. The ambiguity confronting us is the meaning of the phrase "engage in."

We endorse Keyport's and A & K's argument that the Legislature intended that "engage in" means "perform" work on the public work project. The trial court rejected this interpretation, finding that "a subcontractor becomes 'engaged' or involved in the bidding process the moment the contractor lists the subcontractor on ... its bidding specifications" as required by the Local Public Contracts Law, *N.J.S.A.* 40A:11–16. However, *N.J.S.A.* 40A:11–16 requires the submission of subcontractors' names in the bid proposal only for those who furnish "plumbing and gas fitting ... steam and hot water heating and ventilation apparatus, steam power plants ... [e]lectrical work, ... [and] [s]tructural steel and ornamental iron work...." We are advised that, as a practical matter, many other subcontractors are employed in a public works contract whose names are not required to be disclosed in a bid

proposal pursuant to *N.J.S.A.* 40A:11–16. *All* subcontractors are subject to the registration requirements under the PWCRA. The trial court's reasoning leaves unresolved the question when these other subcontractors would become "engage[d] in" the public works contract.

In our view, the trial court's broad interpretation of the phrase "engage[d] in" will lead to practical difficulties in the enforcement of the PWCRA. As noted, "[c]ontractor" not only is defined as including a "subcontractor," but also a "lower tier subcontractor of a contractor as defined herein...." *N.J.S.A.* 34:11–56.50. In the real world of public contracting, at the time of bid, contractors may not know the identity of "lower tier subcontractors" who may ultimately perform work on the public project. We cannot accept the proposition that the Legislature intended that a contractor's bid, otherwise conforming with the dictates of the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –49, must be invalidated because a lower tier subcontractor, who may perform only a small part of the entire project, was not registered at the time the contractor tendered its bid proposal.

Further, the entire statutory scheme suggests that the Legislature intended that the phrase "engage in" means to "perform" work on the project. For example, in defining "[w]orker," the Legislature included any laborer employed by a contractor or subcontractor who is "engaged in *the performance of services directly upon a public work ....*" *N.J.S.A.* 34:11–56.50 (emphasis added). This language underscores the legislative goal of protecting workers from prevailing wage abuses when they "perform" their services. Moreover, *N.J.S.A.* 34:11–56.55 provides that a contractor and, by definition, a subcontractor, "shall not be precluded from bidding for a public work contract or *performing public work* if the contractor" or subcontractor "has submitted a registration application to the department...." (Emphasis added). Use of the phrase "performing public work" in *N.J.S.A.* 34:11–56.55, which modifies the registration requirement under § 56.51,

suggests strongly that the Legislature uses the phrases "engage[d] in" and "performing" interchangeably.

In addition, a statement attached to the Assembly Appropriations Committee Bill No. 2161, which became the PWCRA, states that the Bill was intended to require "[c]ontractors and subcontractors *who perform* public works contracts to register with the Department of Labor." Assembly Appropriations Comm., *Statement to Assembly Bill No. 2161* (1999) (Statement) (emphasis added). It further states that "[a] contractor or subcontractor will not be able to *perform* or bid on such contracts unless the contractor has registered with the department...." *Ibid.* (emphasis added). To us, the Statement is clear that the Legislature was focusing on subcontractors' "performance" of public works contracts as the temporal point when registration is required.

Moreover, interpreting § 56.51 as requiring registration before a subcontractor's performance of the public work is consistent with the position taken by the Department of Labor, Contractor Registration Section of the Division of Wage and Hour Compliance. Theodore E. Tardiff, the District Supervisor, has advised the parties that the Department had "taken the position that since the subcontractor who does the work is often different from the subcontractor listed in the original bid documents the subcontractor need not register until just before starting work. This policy seems to offer the least confusion and paperwork for all concerned." Further, by "Local Finance Notice" issued to municipalities dated August 8, 2000, the New Jersey Department of Community Affairs, Division of Local Government Services, advised municipalities that:

> While a [general contractor] must submit a copy of his own certificate or application with the bid, *he is not required to do so for all named subcontractors and known sub-contractors.* Once awarded a contract, the [general contractor] is responsible for certification or application compliance for all other subcontractors and sub-subcontractors at such time when they begin work on the project site. It is suggested that language be included in the specifications advising the [general contractor] that any subcontractor and/or sub-subcontractor utilized by the [general contractor] will have to register with the Department of Labor. The municipali-

ty is not responsible to determine if the sub-contractors and/or sub-subcontractors on the public works project are registered under the law.

[Emphasis added.]

■ Although we are not bound by a State agency's legal interpretation of a statute, we give deference to it, considering the fact that the agency responsible for enforcing the statute must concern itself with the practical day-to-day administrative details of enforcement. *Carpet Remnant Warehouse, Inc. v. New Jersey Dep't of Labor,* 125 *N.J.* 567, 587, 593 *A.*2d 1177 (1991); *In re Public Serv. Elec. & Gas Co.,* 167 *N.J.* 377, 384, 771 *A.*2d 1163 (2001); *Merin v. Maglaki,* 126 *N.J.* 430, 436–37, 599 *A.*2d 1256 (1992). Here, both the Department of Labor, charged with enforcing the PWCRA, and the Division of Local Government Services, the municipality's pipeline to information about current legislative enactments, have recognized practical problems arising in the context of public bidding. One such problem is the substitution of subcontractors and lower-tier subcontractors after bids are received and before such subcontractors begin performing work on the project. We defer to the agencies' interpretation of § 56.51.

We are confident that interpreting § 56.51 as requiring subcontractors to register before commencing performance on a public project will not compromise the underlying goals of the Legislature. In enacting the statute, the Legislature underscored its "growing concern over the increasing number of construction industry workers on public works projects laboring under conditions which violate State labor laws and regulations...." *N.J.S.A.* 34:11–56.49a. It declared that "[c]ontractors and subcontractors receiving the benefit of public tax dollars for their work should not be allowed to exploit their workers by denying them benefits and pay mandated by law[.]" *N.J.S.A.* 34:11–56.49b. It determined that it was "therefore necessary and proper ... to establish a registration system for contractors and subcontractors ... in order to better enforce existing labor laws and regulations in the public works industry." *N.J.S.A.* 34:11–56.49c. These laudable goals may be achieved by requiring subcontractors to

register before they begin performing work on the public project. Before a subcontractor begins performing work, no construction industry worker is employed by a subcontractor on a public works project, and no subcontractor is receiving "the benefit of public tax dollars . . . ." *N.J.S.A.* 34:11–56.49b.

Further, a subcontractor's registration application must disclose any "history of previous and/or current labor law violations, and the final dispositions of such violations[,]" *N.J.A.C.* 12:62–2.1(c)6, and "[a]ny other relevant and appropriate information . . . as determined by the Commissioner." *N.J.A.C.* 12:62–2.1(c)8. As a condition to the issuance of an original registration certificate, the Commissioner may require the subcontractor to provide a surety bond "for the benefit of workers damaged by" any prior violations. *N.J.S.A.* 34:11–56.56b(2). In addition, once the subcontractor registers, it is subject to rigorous record-keeping requirements. *N.J.S.A.* 34:11–56.56a. This framework provides the Commissioner of the Department of Labor with a meaningful regulatory control over all subcontractors before they begin performing work on public projects.

Finally, a safeguard is in place to assure that subcontractors have registered before commencing performance of work. A contractor's certificate of registration may be suspended or revoked, *N.J.A.C.* 12:62–2.4(b), if it "[c]ontracted for use in the completion of a public work any subcontractor . . . required to register under the Act who is not so registered." *N.J.A.C.* 12:62–2.4(a)5. Clearly then, once awarded a contract, the general contractor has a compelling reason to assure compliance by the subcontractor before work by the subcontractor is commenced. We cannot conceive that contractors will jeopardize their standing to participate in public work projects by permitting nonregistered subcontractors to perform work on the project.

## II

In its cross-appeal, RCG argues that the trial court erred in concluding that A & K's failure to include its bid price in its corporate resolution was a material defect.

Keyport's bid advertisement required corporate bidders to furnish with the bid a "resolution authorizing its proper officers to submit such a bid and authorize such officers to execute a contract in the event its bid is accepted." It further provided that:

Bids by corporations must be signed with the legal name of the corporation, followed by the name of the State of incorporation and by the signature and designation of the president, secretary or other person authorized to bind it in the matter. The name of each person signing shall also be typed or printed below the signature, and the corporate seal shall be affixed to the Bid.

A & K's corporate resolution did not include its bid price of $3,010,000. In awarding the contract to A & K, the Borough determined that this omission was waivable. The trial court agreed, holding that waiver of this defect would not deprive the Borough of its assurance that the contract would be entered into and performed. The court also concluded that A & K did not "receive any competitive advantage by the waiver of this defect."

Applying the two-prong materiality test expressed by the Court in *Meadowbrook Carting Co., Inc. v. Borough of Island Heights*, 138 *N.J.* 307, 315, 650 *A.2d* 748 (1994), and by Judge Pressler in *Tp. of River Vale v. R.J. Longo Constr. Co.*, 127 *N.J.Super.* 207, 216, 316 *A.2d* 737 (Law Div.1974), we are satisfied that the omission of the bid price in the corporate resolution was a waivable defect. Unlike the bidder who failed to submit a consent of surety, as in *Meadowbrook*, the omission here did not have the capacity to "undermine the stability of the public-bidding process." *Meadowbrook, supra*, 138 *N.J.* at 321, 650 *A.2d* 748. Because of the omission of the bid price in the resolution, A & K can hardly "unilaterally 'cancel'" the contract award. *De Sapio Constr. Inc. v. Tp. of Clinton*, 276 *N.J.Super.* 216, 222, 647 *A.2d* 878 (Law Div.1994). The president of A & K, Shawn Mowery, ninety-nine percent owner of the corporate stock, signed the resolution which provided that "in the event the Corporation is awarded the contract ... the undersigned [is] hereby authorized and *directed* to execute on behalf of the Corporation, a contract with the Borough of Keyport...." (Emphasis added). The bid proposal itself, signed by Mowery as president, included the $3,010,000 bid price. Moreover, as part of its bid A & K submitted a bid bond

which, by its terms, would be forfeited if A & K did not execute the contract. Finally, a revised corporate resolution, including the bid price, was supplied by A & K prior to the award of the contract. For the foregoing reasons, the omission did not give A & K a competitive advantage.

Reversed and remanded with direction that an order be entered reinstating the award of Keyport's contract to A & K.

COBURN, J.A.D., concurring.

The well-crafted and entirely persuasive majority opinion, with which I concur in all respects, resolves this case on the assumption that a court would be obliged to vacate a public contract awarded to a contractor, as distinguished from a subcontractor, who had not registered under the Public Works Contractor Registration Act (PWCRA), *N.J.S.A.* 34:11–56.48 to 57. Since the successful contractor in this case had registered before submitting its bid, the majority did not have to decide, and in my view did not decide, whether the award of a contract to an unregistered contractor must be vacated under the PWCRA.

With respect to that issue, defendant Borough of Keyport offered the following arguments:

[T]he duty of enforcing the Registration Act and sanctioning violations by contractors thereunder was given by the Legislature to the Commissioner of the Department of Labor. The Commissioner was specifically authorized to adopt regulations to carry out the purposes of the act. *See N.J.S.A.* 34:11–56.57. In this respect, the Registration Act is consistent with other sections of Title 34, which vests the Department of Labor with authority over wage laws such as the "New Jersey Prevailing Wage Act," *N.J.S.A.* 34:11–56.25 *et seq.*, and other labor laws pertaining to, *inter alia,* worker safety, (*See e.g.,* the Construction Safety Act, *N.J.S.A.* 34:5–166 *et seq.;* the Worker Health and Safety Act, *N.J.S.A.* 34:6A–1 *et seq.*), alien and nonresident workers, (*See e.g., N.J.S.A.* 34:9–1 *et seq.* ("Aliens and Nonresidents")), and migrant labor. (*See e.g., N.J.S.A.* 34:9A–1 *et seq.* ("Migrant Labor")).

The Department of Labor has adopted regulations under the Registration Act, which have been codified at *N.J.A.C.* 12:62–1.1 *et seq.* Therein, the Commissioner delegates all power and duties under the Registration Act to the Director of the Division of Wage and Hour Compliance within the Department. *See N.J.A.C.* 12:62–1.3. No such delegation is made to any political subdivision of the State,

including municipalities, nor is any nexus with the Local Public Contracts Law established.

If *Defendant Keyport must now enforce legal restrictions and procedures of the Registration Act, the door will be open for unsuccessful bidders to contest contract awards based upon alleged failures by municipalities to enforce such other aspects of Title 34 as might affect public bidding.* Whatever the scope of these additional burdens upon municipalities, one would have to anticipate a significant dedication of resources and personnel in order for municipalities like Defendant Keyport to acquire the expertise and ability to assume such additional duties. This effort, of course, would necessarily extend beyond municipalities to counties and other regional public purchasing agencies, equally encumbered by such an assignment.

Given the potential reach of same, we respectfully urge this court to resist finding that Defendant Keyport has any duty or authority under the Registration Act until such time that the Legislature adopts a precise statutory mandate establishing and defining the obligations of local contracting units under said Act.

Even if the Registration Act did confer a duty upon municipalities to enforce the terms of the Registration Act, Defendant Keyport would not necessarily have the *authority to invalidate the contract awarded to Defendant A & K.* As the Registration Act is presently drafted, a violation thereof is not punishable by forfeiture of contractual rights. A contractor or subcontractor who violates the terms of the Registration Act (1) is guilty of a disorderly persons offense, (2) can have its contract registration revoked or suspended by the Department of Labor for up to five years, and (3) may be required by the Department to post a surety bond for the benefit of workers receiving inadequate wages or benefits. *See N.J.S.A.* 34:11–56.56. However, not even the Department can enjoin a violator from performing, or cause a violator to forfeit, any existing public works contract. *See id.*

I believe those arguments are sound. Thus, to the extent that the majority opinion might be read broadly, but I believe inaccurately, as holding otherwise, I respectfully note my disagreement.