**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1117-16T4

IN THE MATTER OF
RM-124635/2016-2019
SNOW REMOVAL AND
SALTING SERVICES CONTRACT.

_____

Submitted August 21, 2018 – Decided September 12, 2018

Before Judges Sumners and Gilson.

On appeal from the New Jersey Turnpike Authority.

Mattleman, Weinroth & Miller, PC, attorneys for appellant Elite Investors, Inc. (Jeffrey A. Malatesta, of counsel and on the brief).

Chiesa Shahinian & Giantomasi, PC, attorneys for respondent New Jersey Turnpike Authority (John F. Casey, on the brief).

PER CURIAM

Elite Investors, Inc. (Elite), the lowest bidder to the New Jersey Turnpike Authority's (the Authority) Request for Bids (bid specifications) for a snow removal and salting services contract, appeals from the final agency decision

rejecting its bid because there were material deviations from the bid specifications. We affirm.

The general purpose of all public bidding laws is to "secure for the taxpayers the benefits of competition and to promote the honesty and integrity of the bidders and the system." In re Protest of the Award of On-Line Games Prod. & Operation Servs. Contract, Bid No. 95-X-20175, 279 N.J. Super. 566, 589 (App. Div. 1995). The laws are to be "construed as nearly as possible with sole reference to the public good. Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition." Ibid. (quoting Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., 99 N.J. 244, 256 (1985)). "The preliminary inquiry is, of course, whether the bid actually deviated from the solicitation for bids." In re Request for Proposals #17DPP00144, 454 N.J. Super. 527, 560 (App. Div. 2018) (citing Twp. of River Vale v. R.J. Longo Constr. Co., 127 N.J. Super. 207, 215-16 (Law Div. 1974)). The conditions and specifications of a bid "must apply equally to all prospective bidders; the individual bidder cannot decide to follow or ignore these conditions." Hall Constr. Co. v. N.J. Sports & Exposition Auth., 295 N.J. Super. 629, 635 (App. Div. 1996). Moreover, any material departure from the bid specifications renders a bid non-conforming and

invalid. Ibid. Although minor or inconsequential discrepancies and technical omissions can be waived, material conditions cannot be waived by the contracting authority. Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 314 (1994).

On June 16, 2016, the Authority received three bids: (1) Elite at $24,530.00; (2) Defino Contracting Company (Defino) at $24,740.00; and (3) Triple C Nurseries at $26,894.00. Although Elite's bid was the lowest bid, the Authority's Board of Commissioners later determined on July 26, that the bid deviated from the bid specifications – "untimely submission of its vehicles' registration and insurance information and its vehicles failed the Authority's inspection" – and rejected the bid and awarded the contract to Defino. Elite protested the bid award; contending that its bid satisfied the bid specifications. After having an informal meeting with Elite and giving it the opportunity to provide an additional written submission, the Authority issued a final agency decision on October 7, rejecting Elite's protest.

Before us, Elite argues that the Authority's rejection of its low bid was arbitrary, capricious, and unreasonable. Elite also argues that its past history of providing the same services with a sister company demonstrates its ability to perform the services required by the Authority. We are unpersuaded.

The Authority's decision detailed its reasons for determining that Elite's bid did not comply with two material components of the bid specifications. First, the bid specifications required that the registration and insurance information for the required vehicles – "six Class 8, 11-ft manual reversing heavy duty, tandem rear-axle plow trucks of minimum ten-yard capacity with a minimum gross weight of 55,000 pounds when loaded with their ballast" – to perform the snow removal and salting services was due no later than June 17, one business day after the bid submission deadline. The bid specifications stated in bold lettering: "Failure to submit the completed information within one (1) business day of the bid opening will result in bid rejection."

Prior to formally rejecting Elite's bid, the Authority's Superintendent of Snow Operations sent an email to Elite on June 23, inadvertently stating that proof of registration and insurance for the vehicles could be submitted by June 28. The next day, however, the Superintendent sent an email clarifying that only equipment deficiencies were curable by the close of business on June 28. In fact, this correction email reiterated the instruction given to bidders at the June 2 pre-bid meeting, which Elite's president attended. When Elite submitted the missing registration and insurance information on June 28, the Superintendent

4

responded that day with an email stating: "You're [sic] information was received [sic] and is under review."

Second, the bid specifications stipulated that the Authority reserved the right to inspect each bidder's equipment. At the pre-bid meeting, prospective bidders were advised that equipment inspections would begin the week of June 20 and that the deadline for any post-inspection deficiencies was June 28. On June 23, Authority personnel inspected Elite's equipment and determined Elite did not have six qualified trucks that were safe for road-readiness as required by the specifications. The Authority's Director of Maintenance determined the trucks were in extremely poor condition, beyond "normal wear and tear issues." The inspection revealed a missing engine cover, a disassembled dashboard, ripped cushions, bald tires, headlights hanging out, missing body parts, fluid leaks and cracked or missing mirrors or glass. Three trucks were also unsuitable to accommodate the attachment of the Authority's salt spreaders without modification. Elite did not cure these deficiencies by the June 28 deadline as required in the bid specifications.

In rejecting Elite's bid, the Authority relied upon the long-recognized two-prong test adopted by the Supreme Court in Meadowbrook Carting Co., to

5                                                      A-1117-16T4

determine whether the company's deviation from the bid specifications were material and not waivable.

> [F]irst, whether the effect of a waiver would be to deprive the [public body] of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether [the defect] is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.
>
> [Meadowbrook Carting Co., Inc., 138 N.J. at 315.]

Finding the submission of the registration and insurance information for Elite's vehicles after the June 17 deadline was "a mandatory, non-waivable material deviation from the bid specifications," the Authority determined that to waive the requirement

> would result in [two] adverse effects. It would allow Elite the advantage over compliant bidders not only to shop for insurance rates and delay payment of registration fees, but also the power to determine unilaterally whether or not to honor its bid after seeing all bids upon opening.

As for the inspection of Elite's trucks, the Authority noted that it exercised its discretion under the bid specifications to inspect and reject the required equipment found to be in such a poor, unsafe physical state. The Authority rejected Elite's mistaken belief that equipment defects could be cured by October

6

15, the date the bid specifications provided that the snow season began. The

agency reasoned the

> contention misreads the specifications and would render certain language of the specifications a nullity. First, nowhere in the Request for Bid is there any reference to a "readiness date" or the suggestion that October 15, 2016 is the date to assess the quality of the equipment.
>
> . . . .
>
> More pertinent, however, is the [bid specification] language . . . , which identifies as one of the "Causes for Potential Rejection" if the Director of Maintenance finds the bidder's equipment to be inadequate.
> . . . It does not make sense to suggest that the Authority must wait until an award is made and performance is required in order to judge the ability of the bidder to perform. In this case, it was a reasonable exercise of discretion to deem Elite's equipment was not road ready at the time of inspection and was the basis for rejection of Elite's bid.

We are satisfied the Authority performed an appropriate Meadowbrook

analysis and determined, based upon substantial credible evidence before it, that

Elite's deviation from the bid was a material, non-waivable condition for the

cited reasons. Waste Mgmt. of N.J., Inc. v. Union Cty. Utils. Auth., 399 N.J.

Super. 508, 525-26 (App. Div. 2008). There was nothing arbitrary, capricious,

or unreasonable about the Authority's rejection of Elite's bid.  <u>Barrick v. State</u>,

218 N.J. 247, 259 (App. Div. 1995).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION