DONALD S. HUBSCH, CO., INC., APPELLANT, v. CHARLES F. SULLIVAN, DIRECTOR, DIVISION OF PURCHASE AND PROPERTY, DEPT. OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENT.

Argued May 24, 1966—Decided July 12, 1966.

*Mr. William L. Boyan* argued the cause for appellant (*Mr. George Warren,* attorney).

*Mr. Richard Newman,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Alan D. Kirby,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered

PER CURIAM. The Director of Purchase and Property, Department of the Treasury, advertised for bids for the moving of the Department of Agriculture and the Department of Health from their then existing quarters to the new Health-Agriculture Building, John Fitch Way, Trenton, N. J. No requests for the bid proposal forms were received in response to the advertising. Thereafter, on February 24, 1965 invitations to bid and bid documents were sent to various movers who had submitted bids to the State on prior occasions. There was a separate proposal form for each moving project and separate bids were expected. The bid proposal forms made attendance mandatory at a pre-bid briefing and "walk-around" session to familiarize prospective bidders with the locations involved and property to be moved.

Appellant's president, Donald S. Hubsch, attended the walk-around, along with representatives of the Director and a number of potential bidders. Joseph W. Seaman of the Purchase Bureau conducted the activities and the meeting for the Director. According to his affidavit and the stenographic notes of the meeting, he announced to all present, including appellant's president (who, he said, was seated about eight feet away at the time), that the Director reserved the right to award a combined contract for the two moves, *viz.* Department of Agriculture and Department of Health. He emphasized, however, that separate bids were required for accounting purposes. Appellant's president deposed that he had no recollection of any such announcement.

In due course nine bidders made individual bids for each of the two moving contracts. The bids of Hubsch Company and Petry Express and Storage Company were:

| *Dept. of Agriculture* | | *Dept. of Health* |
|---|---|---|
| Hubsch ... ... | $5,382 | $58,521 |
| Petry ......... | $7,760 | $23,838 |

Petry's over-all bid of $31,598 was the lowest of all bids submitted for the combined moves.

After conferences with members of his staff, and also with the State Treasurer, the Director concluded, with the approval of the Treasurer, that the interests of the State would be best served by awarding both contracts to one mover. In this way it was felt that possible confusion or lack of coordination, if two movers were utilized, would be avoided. Accordingly the Director instructed his deputy to notify Petry that its combined low bid would be accepted. The deputy communicated with Petry Company informing it of the probable award of the contract to it on a combined basis, and suggested a possible reduction in the total bid because of savings in overhead if it performed both moving projects. Petry agreed to accept a combined price of $30,000.

The moving was scheduled to begin April 12, 1965. On March 30 appellant received written notification from the Director informing it that its bids were being rejected and that a single contract for both moves was being awarded to Petry, since its over-all bid was the lowest. Hubsch was given an invitation to communicate with the Director if there were any questions about the decision.

A conference was requested by Hubsch and held on April 8. It was attended by the Director, Deputy Director, Joseph W. Seaman of the Purchase Bureau, and a member of the Attorney General's staff, also by Mr. Hubsch, the sales engineer of his organization and his attorney. The reasons, as noted above, for the award of the single contract for both moves to Petry as the lowest combined bidder were explained. It developed at the conference that when Hubsch bid for the work, its interest was only in the Department of Agriculture move. Consequently, it intentionally overbid by $20,000 on the Department of Health job, a device of which the Director indicated his disapproval.

When the Director declined to change his decision, Hubsch unsuccessfully sought a preliminary restraint against the handling of the two moves under the single contract and the award of the contract to Petry. Thereafter an appeal was

taken to the Appellate Division and we certified it before argument there.

The issues raised on this appeal, including the question of mootness, follow the same pattern as those presented in *Commercial Cleaning Corporation v. Sullivan*, 47 *N. J.* 539 (1966) decided today. There is no need to discuss them again. They are controlled by that opinion.

Some further comment should be made, however, with respect to the Director's action in combining the two bids of each bidder and awarding a single contract to the lowest over-all bidder.

As has been noted above there was nothing in the advertising for bids stating or suggesting that the lowest combined bid would be the successful one. Separate bid proposals for each moving project were given to prospective bidders. The conditions and specifications called for separate bids. There was nothing in the bidding instructions hinting at the possibility of the award of a unitary contract to the lowest total bidder.

The first hint that the low over-all bid might be taken came, according to the Director's staff, as an oral statement at the pre-bid meeting and "walk-around" of prospective bidders. The appendix contains substantial evidence of the fact, although Mr. Hubsch says he has no recollection of hearing any such statement. Twenty-three prospective bidders attended the meeting. Neither party to this proceeding submitted affidavits on the subject from any of them. It cannot be said on the record presented to us that appellant has established that the statement was not made.

But such important matters should not be left to oral announcements at pre-bid meetings. They should be set forth explicitly in the bid proposal documents or in the specifications. Certainty and fairness are assured in that way. All prospective bidders are placed on an equal competitive level. Doubts on that score cannot emerge, and the possibility of preference among bidders is prevented. Even when it is clear that the oral announcement was made, the possibility of a

prospective bidder's not hearing it because his attention was diverted momentarily should not be ignored. The policy considerations involved stand in the way of permitting such a contingency to arise on a matter so important to the bidders and to the public. If this were not the rule, the mandate for unquestionable equality among bidders might become illusory and the advantages of competition would be lost to the public.

We assume in this case, that failure to advise in the advertisement for bids, the bid proposals or in the specifications, of the reservation by the Director of the right to award a single contract to the lowest over-all bidder, was an oversight, and not customary practice.

For the reasons stated, it cannot be said that the Director's action in awarding the contract to Petry was unlawful.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.