717 A.2d 998

IN THE MATTER OF REQUEST FOR PROPOSALS NO. 98–X–29314 REFLECTIVE SHEETING LICENSE PLATES.

Superior Court of New Jersey
Appellate Division

Argued Telephonically August 24, 1998—Decided August 31, 1998.

Before Judges SHEBELL and KEEFE.

*Maeve E. Cannon,* argued the cause for appellant, 3M Corporation (*Hill Wallack,* attorneys; *Ms. Cannon,* on the brief).

*Catherine H. Schafer,* Deputy Attorney General, argued the cause for respondent, *Lana J. Sims,* Director, Division of Purchase and Property (*Peter Verniero,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Ms. Schafer,* on the brief).

*Edward A. Zunz, Jr.,* argued the cause for Avery Dennison Marketing Films Division (*Riker, Danzig, Scherer, Hyland & Perretti, LLP,* attorneys; *Mr. Zunz,* on the letter-brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On April 25, 1997, the State of New Jersey, Department of Treasury, Division of Purchase and Property (Division) issued Request For Proposal (RFP) No. 98–X–29314, soliciting bids from firms for the supply of reflective sheeting materials and support services necessary to produce finished license plates. The RFP called for a one year contract with possible extensions totalling up to an additional twenty four (24) month period beyond the original expiration date.

A mandatory pre-bid conference was held on May 15, 1997. After the bid conference, an addendum to the RFP was issued that clarified the four specific line items to be bid by the vendors. The first line item provided for "pre-clear" graphic reflective sheeting license plate materials including the stretch and registry equipment with support services. The second line item provided for "pre-clear" graphic reflective sheeting license plate material and support services only, without stretch and registry equipment. The third line item provided for "pre-clear" license plate material without stretch and registry equipment. Line item four provided:

> PRICE OF SUPPLYING AND INSTALLING STRETCH AND REGISTRY EQUIPMENT NEEDED TO PRODUCE GRAPHIC REFLECTIVE LICENSE PLATES. PRICE TO INCLUDE FULL WARRANTY (1 YEAR MINIMUM) ON ALL EQUIPMENT ...

> THIS EQUIPMENT MUST BE COMPATIBLE WITH AND ALLOW THE USE OF ANY EXISTING STOCK OF REFLECTIVE SHEETING IN POSSESSION OF DEPTCOR. IT SHOULD MEET OR EXCEED THE PERFORMANCE STANDARDS OUTLINED IN THE SPECIFICATIONS WITH ALL BRANDS OF REFLECTIVE SHEETING JUDGED AS ACCEPTABLE EQUALS BY THE STATE OF NEW JERSEY.

On June 16, 1997, intervenor, Avery Dennison (Avery) submitted a bid of $204,000 under line item four. Avery's bid was contingent upon the award of line item two to Avery so that Avery could also provide the "pre-clear" graphic reflective sheeting license plate material and support services for $.75 per square foot. Avery provided the following analysis of why its conditional bid was advantageous to the State:

Combining the sheeting and purchase of equipment appears to be the lowest cost option over the long term for the State. This eliminates the need for the sheeting manufacturer to amortize the equipment, maintenance, and removal costs over a three (3) year period and build the cost into the sheeting price. Selection of this option should result in competitive sheeting prices for all future bids.

On June 13, 1997, 3M Corporation (3M) submitted a bid of $260,000 under line item four. 3M also submitted a bid under line item two for $.705 per square foot, however, its bid for line item two was rejected for an alteration without initialing, leaving Avery's bid as the only valid bid for line item 2.

By letter dated August 5, 1997, 3M protested only the award of line item four to Avery. 3M contended that Avery's bid was non-conforming and illegal. On August 8, 1997, Lana J. Sims, Director of the Division, notified 3M that line one was awarded to 3M and line two and four were awarded to Avery. The Director, in awarding the two line items to Avery, noted that each decision was independent of the other and in conformance with the specifications. The Director declared this to be a Final Agency Decision, stating 3M's appeal is denied.

By letter dated August 14, 1997, 3M submitted a request for reconsideration of the Director's decision, or in the alternative, a stay of the implementation of the contract to permit 3M an opportunity to seek judicial review. On August 29, 1997, the Director determined that reconsideration of 3M's claim was appropriate and directed the agency to refrain from issuing the contract while she examined 3M's arguments. By letter dated December 15, 1997, the Director again rejected 3M's arguments. She found that the manner in which Avery responded to line items number two and four did not enable it to secure an unfair competitive advantage. 3M requested a stay of the Director's award pending appeal, and the Director agreed to a stay pending appeal of the award of lines two and four.

On January 7, 1998, 3M filed a Notice of Appeal with this court, challenging only the award of line item four to Avery. On January 23, 1998, 3M filed a motion to accelerate review, which we granted. On March 20, 1998, the Director issued a final determi-

nation rescinding the award to Avery and notifying all bidders of the State's intention to rebid line items two and four. The Director noted that she had "reviewed the brief filed on behalf of 3M in the matter of their appeal and [ ] reconsidered the appropriateness of Avery's award." The State also filed a Motion to Remand the matter to the Director so that the Director could rebid items two and four.

On April 3, 1998, Avery filed a Motion to Intervene. Avery has not filed an appeal with this court, but as an intervenor contends that line item two should not be rebid, since the award of line item two was not challenged and the Director acknowledged that line items two and four were separate. On April 21, 1998, we denied without prejudice the State's Motion to Remand.

The only issue properly raised on appeal is whether Avery's conditional response to line item four constitutes a nonwaivable material deviation from the RFP. The Director, however, maintains that the appeal should be dismissed as moot because the Director has exercised statutory authority, *N.J.S.A.* 52:34–12(f), and the inherent authority of the State to rescind the contract award.

We conclude that in any event the Director's termination of the award as to line item four was required as Avery's proposal fails to meet the mandatory requirements of the RFP. Moreover, even though it was awarded the contract under line item four, Avery does not take a position on the Director's rescission of the award and request for a remand for rebidding on that line item and, of course, 3M supports the Director's position. Thus, none of the parties object to the remand of line item four for rebidding and, therefore, the only issue on appeal is now moot. *Oxfeld v. New Jersey State Bd. of Educ.,* 68 *N.J.* 301, 303–04, 344 *A.*2d 769 (1975); *Cinque v. Dept. of Corrections,* 261 *N.J.Super.* 242, 243, 618 *A.*2d 868 (App.Div.1993). We, nonetheless, choose to rule on the issue. *See Coastal Group v. Planned Real Estate Development Section,* 267 *N.J.Super.* 49, 56, 630 *A.*2d 814 (App.Div.1993).

Our conclusion that Avery's conditional response to line item four constitutes a nonwaivable material deviation from the RFP is well supported. There is a two-part test for determining "whether a specific noncompliance constitutes a substantial and hence non-waivable irregularity." *Meadowbrook Carting Co. v. Island Heights Borough*, 138 *N.J.* 307, 315, 650 *A.*2d 748 (1994) (quoting *Township of River Vale v. R.J. Longo Constr. Co.*, 127 *N.J.Super.* 207, 215, 316 *A.*2d 737 (Law Div.1974)). The test requires:

First, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.

[*Id.* at 315, 650 *A.*2d 748 (quoting *L. Pucillo & Sons, Inc. v. Township of Belleville*, 249 *N.J.Super.* 536, 547, 592 *A.*2d 1218, *certif. denied*, 127 *N.J.* 551, 606 *A.*2d 364 (1991)).]

The RFP provided that bidders were to submit independent prices for each line item. Line items two and three provided that the cost "shall not include any cost for stretch and registry equipment." Avery tied the award of its contract under line item four to the simultaneous award of line item two. The State could not purchase the equipment under line item four without also purchasing from Avery the sheeting materials under line item two.

If the State had accepted Avery's proposal for line item four, but had accepted another bidder's line item two proposal, the State would have been deprived of its assurance that the line item four contract would be performed and guaranteed according to its specified requirements. Even though the State had been willing to overlook this non-compliance because line item two had been awarded to Avery, Avery's line item four proposal, nevertheless, fails the first prong of the materiality test.

As to the second prong, Avery received a competitive advantage by conditioning line item four on the award of line item two. In its bid, Avery noted:

Combining the sheeting and purchase of equipment appears to be the lowest cost option over the long term by the State. This eliminates the need for the sheet

manufacturer to amortize the equipment, maintenance, and removal costs over a three (3) year period and build the cost into the sheeting price.

Thus, Avery acknowledges that it is "building" the cost of its equipment into the sheeting price. Even though Avery submitted a lower bid than 3M for line item four, Avery was awarded a line item two contract for $.75 per square foot, which was 4 1/2 cents higher than 3M's disqualified bid under line item two.

As the State now acknowledges, Avery thereby received a competitive advantage. This is so because 3M's bid and the bids of others would have been affected had they known that they could subsidize equipment with other line items. For example, 3M could have submitted a lower line item four bid and a higher line item two bid.

In *Pew v. Chester,* 96 *N.J.L.* 45, 46, 114 *A.* 151 (1921), an advertisement for a public bid called for separate pricing on the component parts of a truck. *Id.* at 46, 114 *A.* 151. Only lump sum bids were received in response to the advertisement. *Ibid.* The Court held:

> It must be obvious that if the advertisement called for separate pricing of the component parts of the truck, the award was illegally made; for, if the contract is awarded on some other basis than that advertised, the bidders are not on the same footing, and this is the express purpose of the statutory competition.
>
> [*Ibid.*]

Avery's proposal is analogous to a lump sum bid as Avery made one line item contingent upon the acceptance of another line item. By accepting Avery's line item four bid, the State changed the specifications without giving all bidders an opportunity to change their bids. *See Donald S. Hubsch Co. v. Sullivan,* 47 *N.J.* 556, 559, 222 *A.*2d 12 (1966) (noting that changes to the specifications should be set forth explicitly in the bid proposal documents so that prospective bidders are placed on an equal competitive level).

Thus, Avery's bid fails the second prong of the materiality test. Since Avery's bid as to line item four fails both prongs of the materiality test, we conclude that Avery's line item four bid was a material deviation from the RFP specifications.

3M's Notice of Appeal and accompanying Case Information Statement address only line item four, and Avery has not appealed the Director's withdrawal of the award as to line item two. We, therefore, decline to rule on the validity of the Director's action as to line item two. We do observe, however, that because there may have been greater competition if all vendors realized that they could have conditioned their bids for line item four upon receipt of line item two, cheaper bids for both line items may have been obtained by the State. If the State is to obtain the benefit pointed out by Avery, it can only do so if both line items are rebid.

The award to Avery as to line item four is reversed.