SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In the Matter of Protest Filed by El Sol Contracting and Construction Corp., Contract T100.638 (A-33-24) (090076)**

**Argued March 31, 2025 -- Decided May 5, 2025**

**HOFFMAN, J., writing for the Court.**

In this appeal, the Court determines whether the New Jersey Turnpike Authority (NJTA) made a decision that was arbitrary, capricious, and unreasonable when it rejected a bid submitted by El Sol Contracting & Construction Corp. (El Sol) because the bid documents did not include a validly executed Consent of Surety (CoS) from its surety, Liberty Mutual Insurance Co. (Liberty).

In May 2024, the NJTA solicited bids for a contract to repair bridges in the Newark Bay area as part of a redecking project. The bid specifications then in effect required that proposals be accompanied by a Proposal Bond for 10% of the proposal, and that the Proposal Bond "be accompanied by a Power of Attorney [(PoA)] and a [CoS]." They also required that the CoS "set forth the surety company's obligation to provide the Contract Bond upon award of the Contract to the Bidder." The NJTA received five bids; the lowest was from El Sol ($70,865,354); the second lowest bid was from Joseph M. Sanzari, Inc. ($80,735,000).

Liberty's Proposal Bond featured a "Bond ID" number. It was "entered and executed" by attorney-in-fact Katherine Acosta, who also signed the CoS as attorney-in-fact. The CoS provided that "in the event an Award is made to [El Sol] for the project . . . and a contract is signed, [Liberty], as Surety, will execute or arrange for the execution of the necessary final bonds in an amount not less than 100% of the Principal's Proposal." Liberty's PoA "appoint[ed] Katherine Acosta . . . [as] its true and lawful attorney-in-fact, with full power and authority . . . to sign, execute and acknowledge the following surety bond," followed by the Bond ID number for El Sol's Proposal Bond. Liberty's PoA expressly "limits the acts of those named herein," specifying that "they have no authority to bind [Liberty] except in the manner and to the extent herein stated."

On July 29, 2024, a compliance review memo prepared by NJTA staff indicated that the three bids for which Liberty was the surety were defective -- all for the same reason: "The limited [PoA] provided does not grant authority to bind

1

the surety to issue the requisite contract bond." The remaining two bids were accompanied by PoAs from other sureties that authorized the attorneys-in-fact to execute both the Proposal Bond and the CoS. Several weeks after identifying the defect in the three Liberty submissions, the NJTA revised its specifications to require that "[t]he Proposal Bond . . . and the [CoS] shall be accompanied by a [PoA] evidencing the signatory's authority to bind the Surety to the Proposal Bond . . . and the [CoS]." The NJTA did not rely upon the revision in considering the bids for the redecking project and explained that, in making this prospective change, it was "trying in good conscience to ensure that the defect here never occurs again." On August 27, 2024, the NJTA awarded the contract to the second-lowest bidder.

Liberty emailed the NJTA, stating that (1) because Liberty had used this same language in the past on bid documents for prior NJTA projects, and followed through on issuing the final bonds, the NJTA has "waived any perceived defect within the language of the PoA"; (2) the Law Department "could have allowed the bidder to correct the immaterial defect" and "amend the PoA"; and (3) the Proposal Bond, the PoA, and the CoS should be treated as a "single instrument," having been sent at the same time, in a single file, and "with the same identifying bond number." El Sol submitted a bid protest letter, making many of the same points. The NJTA denied El Sol's bid protest on September 17, 2024.

The Appellate Division reversed the NJTA's determination, interpreting the specifications at issue to require that the PoA be "tethered" only to the Proposal Bond, not the CoS, and concluding that "Liberty's . . . offer to modify the language of the POA to address the issue" obviated the "NJTA's practical concerns in obtaining assurances." The Court granted certification. 260 N.J. 98 (2025).

**HELD:** Because of the defect in Liberty's PoA, El Sol did not submit a CoS that validly bound Liberty to execute the Contract Bond, and its bid was therefore incomplete. The NJTA did not act in an arbitrary, capricious, and unreasonable manner when it rejected El Sol's legally deficient bid.

1. The underlying and foundational purpose of public bidding in New Jersey is to guard against favoritism, improvidence, extravagance and corruption, and to secure for the public the benefits of unfettered competition. Those underlying policies forbid waiving material bidding requirements -- such as providing a valid CoS -- that "could affect the fairness of the competitive-bidding process." Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 324 (1994). In Meadowbrook, the Court made clear that waiving the CoS requirement "undermine[s] the stability of the public-bidding process," id. at 321, and "ha[s] the capacity to affect the fairness of" that process, id. at 322-23. "[R]equir[ing] that a [CoS] be submitted with the bid proposal should be understood to enhance the . . . ability to determine the lowest responsible bidder, thereby minimizing the risk of

2

default by the successful bidder." Id. at 322. Accordingly, and because "the overriding interest in insuring the integrity of the bidding process is more important than the isolated savings at stake," id. at 325, the Court held that failing to include a CoS is a "material defect that can be neither waived nor cured," and it expressly "overruled" any other case in "conflict with [that] holding," id. at 320. (pp. 12-16)

2. Applying those principles here, the Court first finds that the Proposal Bond cannot be viewed as a substitute for the CoS, citing the language of the Bond, Meadowbrook's holding that failure to execute a proper CoS when one is required is an unwaivable defect, the lack of supporting evidence, and the fact that El Sol also submitted a CoS. The Court then explains that the PoA cannot be deemed to apply to the CoS as well as the Proposal Bond simply because they were submitted under the same identifying number: the Court cannot ignore the exclusive and prohibitive wording of the PoA. Nor could the NJTA be estopped from rejecting El Sol's bid because it had previously accepted Liberty's PoA and CoS on thirteen occasions: once the NJTA realized, in July 2024, that El Sol had submitted a bid without a validly executed CoS from Liberty, it was legally bound to apply the law and, at the same time, duty-bound to amend the specifications in such a way that this situation would not recur -- and it did so. There is no evidence in the record to show that the NJTA was aware of Liberty's defect in the thirteen prior bids or that it acted in bad faith when it rejected El Sol's defective bid. Finally, even if the specifications at the time of bidding did not require that a PoA authorize the CoS, the required CoS still had to be validly executed, and this one was not because the PoA expressly designated Acosta to sign only the Proposal Bond -- not the CoS or anything else. The Court therefore finds that El Sol has failed to satisfy its burden of proving that the NJTA acted in an arbitrary, capricious, and unreasonable manner in rejecting its bid. (pp. 17-23)

**REVERSED.**

**JUSTICE FASCIALE, dissenting,** notes that the specifications in existence when El Sol bid on the project did not require that a PoA accompany a CoS. In Justice Fasciale's view, the NJTA knew that El Sol's bid packet was valid because it substantively changed the specifications to require that a PoA accompany a CoS and because it accepted identical bid bond documents from Liberty thirteen times. Justice Fasciale observes that, under the NJTA's own definitions, a proposal bond "guarantee[s] that Bidder will execute the Contract and furnish the required Contract Bond, if Bidder's Proposal is accepted" and explains that no case, statute, rule, or regulation holds that the CoS is unenforceable without a PoA.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, and NORIEGA join in JUSTICE HOFFMAN's opinion. JUSTICE FASCIALE filed a dissent, in which JUSTICE PIERRE-LOUIS joins.**

3

# SUPREME COURT OF NEW JERSEY
## A-33 September Term 2024
### 090076

---

In the Matter of Protest
Filed by El Sol Contracting
and Construction Corp.,
Contract T100.638.

---

On certification to the Superior Court,
Appellate Division.

---

| Argued | Decided |
|---|---|
| March 31, 2025 | May 5, 2025 |

---

Thomas A. Abbate argued the cause for appellant New Jersey Turnpike Authority (Decotiis, Fitzpatrick, Cole & Giblin, attorneys; Thomas A. Abbate and Jason S. Nunnermacker, on the briefs).

Michael F. McKenna argued the cause for respondent El Sol Contracting and Construction Corp. (Cohen Seglias Pallas Greenhall & Furman, attorneys; Michael F. McKenna and Timothy R. Ryan, on the brief).

Walter Buzzetta submitted a brief on behalf of amicus curiae The Surety & Fidelity Association of America (Stradley Ronon Stevens & Young, attorneys; Walter Buzzetta, and Patrick Kingsley a member of the Pennsylvania, New York, and Maryland bars, admitted pro hac vice, on the brief).

In this appeal, the Court determines whether the New Jersey Turnpike Authority (NJTA) made a decision that was arbitrary, capricious, and unreasonable when it rejected the bid for a redecking project submitted by El Sol Contracting & Construction Corp. (El Sol) because the bid documents did not include a validly executed Consent of Surety (CoS).

A CoS serves to guarantee the performance of a contract: it obligates the bidder, if successful, to provide a Contract Bond for 100% of the contract price ten days after the contract is awarded. As we held in Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 321 (1994), the guarantee provided by a CoS, when required, is so critical to the integrity and fairness of the competitive bidding process that it cannot be waived.

The NJTA rejected El Sol's bid because the Power of Attorney (PoA) from its surety, Liberty Mutual Insurance Co. (Liberty), authorized the attorney-in-fact to sign only Liberty's Proposal Bond and not Liberty's CoS, both required as part of the bid package. Because of the defect in Liberty's PoA, El Sol did not submit a CoS that validly bound Liberty to execute the Contract Bond, and its bid was therefore incomplete. We hold that the NJTA did not act in an arbitrary, capricious, and unreasonable manner when it

rejected El Sol's legally deficient bid.  We therefore reverse the judgment of the Appellate Division.

I.

A.

On May 20, 2024, the NJTA publicly solicited bids for a contract to repair eleven bridges in the Newark Bay area as part of a multi-phase redecking project.  Construction was anticipated to begin in September 2024; substantial completion was anticipated by Spring 2028.

Along with a description of the redecking project, the NJTA provided the 2016 Bid Specifications (Specifications) with which bidders were expected to comply.  Section 102.07 of the Specifications required that proposals "be accompanied by . . . a Proposal Bond . . . in the sum of not less than ten percent (10%) of the total price of the Proposal."  Additionally, Section 102.08 required that the Proposal Bond "be accompanied by a [PoA] and a [CoS], each in a form acceptable to [the NJTA], which shall be executed by the surety company."  Section 102.08 also required that the CoS "set forth the surety company's obligation to provide the Contract Bond upon award of the Contract to the Bidder."[1]

---

[1]  The Specifications comport with the governing regulations in effect at the time of bid consideration, N.J.A.C. 19:9-2.1 to -2.13, which provided in

3

On June 25, 2024, the NJTA received five bid proposals ranging from $70,865,354 to $112,707,000. The lowest bid was from El Sol, and the second lowest bid was from Joseph M. Sanzari, Inc. (Sanzari), in the amount of $80,735,000.

B.

Liberty's Proposal Bond identified "Bond ID: SNJ0530362021" and "bound . . . [Liberty to] the sum of ten percent (10%) of the Total Price of the Proposal." As per Section 102.07, the Proposal Bond made clear that "[i]f" the proposal "shall be accepted by the [NJTA], and [El Sol] shall duly execute the Contract Agreement and furnish the required Contract Bond, . . . [t]hen this [10%] obligation shall be void." Liberty's Proposal Bond also expressly stated that "any and all claims hereunder shall in no event[] exceed the amount of the obligation as herein stated," i.e., 10% of the total. The Proposal Bond was "entered and executed" by attorney-in-fact Katherine Acosta.

The CoS was also signed by Katherine Acosta as attorney-in-fact. It provided that "in the event an Award is made to [El Sol] for the project . . . and a contract is signed, [Liberty], as Surety, will execute or arrange for the

---

relevant part that "[p]erformance bonds, contract bonds, or consents of surety may be required in such form and format as deemed acceptable by the General Counsel . . . to ensure faithful performance of the contract." N.J.A.C. 19:9-2.2(c)(9) (2024) (amended effective Jan. 6, 2025).

execution of the necessary final bonds in an amount not less than 100% of the Principal's Proposal."

Liberty's PoA "appoint[ed] Katherine Acosta . . . [as] its true and lawful attorney-in-fact, with full power and authority . . . to sign, execute and acknowledge the following surety bond: . . . Surety Bond Number SNJ0530362021." That number corresponds with El Sol's Proposal Bond. The PoA, written in the singular ("bond"), referenced only one document: the surety bond. Notably, Liberty's PoA expressly "limits the acts of those named herein," specifying that "they have no authority to bind [Liberty] except in the manner and to the extent herein stated." (emphasis added). The PoA and the CoS do not reference each other.

## C.

On July 29, 2024, while the bids were under compliance review, David Siegler, identified as "Manager, Contracts" for the NJTA, sent a memorandum to Daniel Hesslein, the NJTA's "Acting Chief Engineer," which laid out the five bids for the redecking project and indicated that the three bids for which Liberty was the surety were defective -- all for the same reason. The memorandum, which copied Thomas Holl, the Director of Law for the NJTA, states that, with regard to the three bids for which Liberty provided a PoA and a CoS, the "Law Department recommends rejection due to failure to provide a

5

valid [CoS]." The July 29 memorandum provided the following rationale with regard to the three Liberty submissions: "The limited [PoA] provided does not grant authority to bind the surety to issue the requisite contract bond." The remaining two of the five bids were accompanied by a PoA and a CoS from two different surety companies: Everest and Berkshire Hathaway. The PoA from those surety companies authorized their respective attorneys-in-fact to execute both the Proposal Bond and the CoS.

Several weeks after the July memorandum identifying the defect in the three Liberty submissions, the NJTA, on August 12, 2024, revised Section 102.08 to require that "[t]he Proposal Bond . . . and the [CoS] shall be accompanied by a [PoA] evidencing the signatory's authority to bind the Surety to the Proposal Bond . . . and the [CoS]." The NJTA did not rely upon the revision in considering the bids for the redecking project and explained that, in making this prospective change, it was "trying in good conscience to ensure that the defect here never occurs again."[2]

---

[2] We agree with the Appellate Division that this prospective change "does not dictate the outcome here since the modification post-dates the bid opening date for the Project."

## D.

Two weeks later, at an August 27, 2024 Board Meeting, the NJTA announced that it had awarded the Contract to the second-lowest bidder, Sanzari. In contrast to El Sol, and as acknowledged by El Sol at oral argument, Sanzari submitted a PoA that authorized the attorney-in-fact's execution of both the Proposal Bond and the CoS. The rejection of the El Sol bid prompted El Sol to request the adjournment of the NJTA's award and led to an exchange of correspondence involving El Sol, Liberty, and the NJTA.

On August 27, Liberty wrote to Daniel Hesslein of the NJTA and informed him that (1) because Liberty had used this same language in the past on bid documents for prior NJTA projects, and followed through on issuing the final bonds, the NJTA has "waived any perceived defect within the language of the PoA"; (2) the Law Department "could have allowed the bidder to correct the immaterial defect" and "amend the PoA"; and (3) the Proposal Bond, the PoA, and the CoS should be treated as a "single instrument," having been sent at the same time "in a single electronic file and labeled with the same identifying bond number." On August 29, Liberty wrote El Sol's counsel, "relative to the rejection of the three [Liberty] bidders." It informed El Sol that the above-mentioned acceptance by the NJTA had occurred in thirteen prior bid proceedings and clarified that "[w]hen the agent/broker executes in

7

the [Surety2000] system, the bid and consent both have the same bond number (SNJ#) associated with the electronic submission and are thus tied together."

On or about August 30, El Sol submitted a bid protest letter from its counsel,[3] making many of the same arguments: (1) El Sol complied with the Specifications by submitting a Proposal Bond, a PoA, and a CoS; (2) the Specifications did not require that the PoA validate the CoS; (3) the recently revised Section 102.08 should not control, but is relevant only to any ambiguity that predated the amendment; (4) the NJTA has accepted similar documents in the past; and (5) Liberty's August 29 e-mail, in which it interpreted its own documents, should control.

In the meantime, in correspondence from August 29, the NJTA explained that a "fatal defect with El Sol's bid was discovered during a legal compliance review of the bid documents." The NJTA informed El Sol that the "POA limit[ed] Ms. Acosta's authority to execut[e] the proposal bond and provide[d] no authority for [her] to bind [Liberty] to the obligations contained in the [CoS]," such that El Sol's submission was "tantamount to . . . having submitted no [CoS] at all." Lacking any "evidence that Ms. Acosta has authority to bind [Liberty] to issue the required contract bond," the NJTA

---

[3] This document was dated August 28 but discusses documents exchanged on August 29 and August 30; it appears to have been submitted on August 30.

explained, "the [CoS] does not satisfy the requirement of the bid specifications that mandate the submission of an enforceable promise," in contravention of <u>Meadowbrook</u>.

E.

On September 17, Holl, acting as Hearing Officer, recommended that El Sol's bid protest be denied. Focusing on the requirements of Section 102.08, Holl found that Liberty's PoA "specifically limits Acosta's authority to executing only the proposal bond" and "therefore provides no actual authority for Acosta to bind Liberty to the obligations contained within the [CoS]." Holl again explained that this "fatal defect" was discovered during a legal compliance review. "Accordingly," Holl stated, "[the] NJTA lacked any assurance that Liberty would stand behind the obligations contained in the [CoS] and actually issue the Contract Bond required by the Contract Specifications." Relying upon this Court's decision in <u>Meadowbrook</u>, 138 N.J. at 320, Holl found that this "material defect [could] be neither waived nor cured." On September 17, NJTA Executive Director James D. Carone adopted Holl's recommended decision as the final agency decision.

F.

On November 27, 2024, the Appellate Division reversed the NJTA's determination and remanded the matter, concluding that the NJTA's rejection

9

of El Sol's bid was arbitrary, capricious, and unreasonable. The appellate court interpreted the Specifications to require that the PoA be "tethered" only to the Proposal Bond, not the CoS.

The appellate court acknowledged that "a COS that does not 'bind the surety to supply the required bonds when the contract [is] awarded' will 'constitute[] a material, non-waivable defect in the bid.'" (alterations in original) (quoting Mayo, Lynch & Assocs. v. Pollack, 351 N.J. Super. 486, 497 (App. Div. 2002)). The court found that the PoA provided Acosta with the authority to execute the Proposal Bond but did not address whether the PoA gave Acosta authority to execute the CoS. The court also found that "Section 102.08 did not describe what authority the attorney-in-fact must hold with any detail." The appellate court concluded by stating that the "NJTA's practical concerns in obtaining assurances that El Sol will execute the Contract and perform its contractual obligations are obviated by Liberty's . . . offer to modify the language of the POA to address the issue."

G.

On December 17, 2024, the NJTA petitioned this Court for certification. We granted the petition in early February, 260 N.J. 98 (2025), and have proceeded on an expedited, peremptory schedule, having heard oral argument on March 31, 2025.

10

II.

A.

The NJTA argues that El Sol's bid was defective because it submitted a CoS that was not validly executed by an authorized signatory. In accordance with this Court's guidance in <u>Meadowbrook,</u> the NJTA asserts that its decision was not arbitrary, capricious, or unreasonable for having followed the law.

B.

El Sol asserts that it satisfied the Specifications by having submitted a Proposal Bond, a PoA, and a CoS. According to El Sol, the Specifications did not require that the PoA specifically validate the CoS, and even if they did, the PoA should be read to validate the CoS because they were submitted as a "single instrument" and in a manner and form that was consistent with prior bid submissions from Liberty for other past projects. El Sol also argued, for the first time at oral argument, that the Proposal Bond can substitute for the CoS by committing the surety to the contract amount.

III.

A.

Judicial review of administrative agency action is provided for under the State Constitution. <u>N.J. Const.</u> art. VI, § 5, ¶ 4; <u>see also</u> <u>In re Quest Acad. Charter Sch.</u>, 216 N.J. 370, 383 (2013). Appellate courts review legal

conclusions, including those reached by an administrative agency, de novo. Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992). In other respects, however, the courts' role in reviewing agency actions is "limited." In re Musick, 143 N.J. 206, 216 (1996). We apply a deferential standard and will not overturn such actions unless they are arbitrary, capricious, or unreasonable. In re Yucht, 233 N.J. 267, 279 (2018). The burden to make that showing "rests upon the [party] challenging the administrative action." Lavezzi v. State, 219 N.J. 163, 171 (2014) (alteration in original) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

Courts generally consider three questions when reviewing agency decisions:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Quest Acad., 216 N.J. at 385 (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

### B.

The underlying and foundational purpose of public bidding in New Jersey is "to guard against favoritism, improvidence, extravagance and

12

corruption[, and] . . . to secure for the public the benefits of unfettered competition." Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., 99 N.J. 244, 256 (1985) (quoting Terminal Constr. Corp. v. Atl. Cnty. Sewerage Auth., 67 N.J. 403, 410 (1975)). The "underlying operation and policy" of local public bidding statutes, such as the Local Public Contracts Law, N.J.S.A. 40A:11-1 to -60, discussed in Terminal Construction Corp., are "identical" and apply to the NJTA's competitive bidding process under N.J.S.A. 27:23-6.1(a). George Harms Constr. Co. v. N.J. Turnpike Auth., 137 N.J. 8, 36 (1994). Those underlying policies forbid waiving material bidding requirements -- such as providing a valid CoS -- that "could affect the fairness of the competitive-bidding process." Meadowbrook, 138 N.J. at 324.

C.

Meadowbrook is this Court's seminal decision on the material and unwaivable nature of a CoS at the time of bidding and its tie to the integrity and fairness of the bidding process. In that case, a municipality sought bids for garbage collection services. Id. at 310. "As required by N.J.S.A. 40A:11-22, the bid specifications mandated that bidders submit with their bid proposal a [CoS] guaranteeing that a bonding company will issue a performance bond in accordance with the bid specifications." Id. at 311. The bid opening revealed that the lowest bidder -- whose offer was more than $100,000 less than that of

13

the second-lowest bidder -- had failed to include with its bid "either a [CoS] or a Certificate of Insurance as required by the bid specifications." Ibid. The lowest bidder submitted the Certificate of Insurance roughly half an hour after the bids were opened and provided a CoS four days later. Id. at 311-12. The municipality's "governing body elected to waive those deficiencies and adopted a resolution awarding the contract to" the lowest bidder. Id. at 312.

In considering a challenge to that award by the second-lowest bidder, we began by pointing out the critical role a competitive process plays in furthering the public interest, id. at 313, and the critical role that a timely CoS plays in guaranteeing performance of a contract: "[t]he significance of a [CoS] is that it provides the local government with some assurance at the time of the bid submission that the low bidder will have the capacity to perform the contract and to supply the necessary bonds," id. at 316.

We then reviewed a series of decisions that support the principle that "the ability to secure a proper [CoS] is a consideration that could affect bid calculations." Ibid. (emphasis added) (citing, for example, L. Pucillo & Sons, Inc. v. Township of Belleville, 249 N.J. Super. 536 (App. Div. 1991), for the proposition "that failure to submit [a CoS] threatens policies underlying competitive-bidding statutes"; and DeSapio Constr., Inc. v. Township of Clinton, 276 N.J. Super. 216 (Law Div. 1994), for the proposition that a

14

"conditional [CoS] was [a] material defect because it provided [the] bidder with a competitive advantage over other bidders"). We specifically called attention to DeSapio, in which the Law Division "emphasized the overriding goal of insuring the integrity of the bidding process" and stressed that "[s]trict standards must be maintained so that there is no opportunity for unfettered discretion or favoritism in the public bidding process." Id. at 319 (alteration in original) (quoting 276 N.J. Super. at 222).

In Meadowbrook, we made clear that waiving the CoS requirement "undermine[s] the stability of the public-bidding process," id. at 321,[4] and "ha[s] the capacity to affect the fairness of" that process, id. at 322-23. We also explained that "requir[ing] that a [CoS] be submitted with the bid proposal should be understood to enhance the . . . ability to determine the lowest responsible bidder, thereby minimizing the risk of default by the successful bidder." Id. at 322.

Accordingly, and because "we ha[d] no doubt that the overriding interest in insuring the integrity of the bidding process is more important than the isolated savings at stake," id. at 325, we held that failing to include a CoS is a

---

[4] We explained that such "stability" could be "undermine[d]" in a situation where, "[f]or example, . . . a low bidder that had failed to submit a consent of surety decided it no longer sought the contract because it had determined that its bid was too low." Meadowbrook, 138 N.J. at 321.

15

"material defect that can be neither waived nor cured," and we expressly "overruled" any other case in "conflict with our holding," id. at 320.

IV.

Applying those governing principles, we consider the bidding dispute raised by this appeal and we reverse the decision of the Appellate Division.

It is undisputed that, at the time of bidding, the Specifications in this case required a CoS, a Proposal Bond, and a PoA, and El Sol provided all three documents; further, the PoA expressly authorized Katherine Acosta to execute only the Proposal Bond and not the CoS. It is here that our binding precedent draws a line, because Meadowbrook simply does not allow us to ignore the fact that the CoS submitted at the time of bidding was signed by Katherine Acosta, and the PoA, by its express and exclusive terms, did not authorize Acosta to sign the CoS.

A.

We begin by addressing an argument raised for the first time, and prioritized, by El Sol at oral argument: the Court should overlook any problems associated with the CoS because the Proposal Bond can be read to serve the same function.[5] Because El Sol failed to raise this issue below, or

_____

[5] This argument initially appeared in an amicus brief submitted to this Court by the Surety and Fidelity Association of America (SFAA).

16

even in its briefing before this Court, El Sol has waived it. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35 (1973). Nevertheless, El Sol's argument fails because it requires a substantive rewrite of the Proposal Bond.

According to El Sol's argument, "[t]he bid proposal bond in and of itself says [Liberty] will issue the [Contract] Bond if the contract is awarded." The problem for El Sol is that the Proposal Bond does not say that, and there is nothing in the record to support the notion that the Proposal Bond was ever read or interpreted as a de facto substitute for the CoS.

The relevant Proposal Bond language is as follows:

> (b) If said Proposal shall be executed by the [NJTA], and the principal shall duly execute the Contract Agreement and furnish the required Contract Bond, within the stipulated time,
>
> Then this obligation shall be void, otherwise, the same shall remain in force and effect; it being expressly understood and agreed that the liability of the Surety for any and all claims hereunder shall in no event, exceed the amount of this obligation as herein stated.
>
> [(emphases added).]

At oral argument, El Sol left out the second paragraph of subsection (b) and asked that we read the first paragraph as if it were written to say the following: "If said Proposal shall be executed by the [NJTA], then the

17

principal shall duly execute the Contract Agreement and furnish the required Contract Bond, within the stipulated time."[6]

As is evident, the actual language is contrary to El Sol's proffered rewrite, and therein lies the flaw in El Sol's new argument. The express language of the Proposal Bond says that if El Sol's proposal is accepted and El Sol executes the contract agreement and El Sol furnishes the Contract Bond, then the Proposal Bond will be void and under no circumstances will Liberty's liability under the Proposal Bond be more than 10% of the proposal price. The intent and purpose of subsection (b) of the Proposal Bond is to make clear that if a Contract Bond is signed, the Proposal Bond would be voided, that is all. Moreover, in response to a question at oral argument, El Sol conceded that the Proposal Bond "is not a validly executed consent of surety."

El Sol's new argument fails for a number of additional reasons. First, it reads the CoS requirement completely out of the Specifications, in direct contravention of our holding in Meadowbrook, which stated that failure to execute a proper CoS when a CoS is required -- as it was here -- is an unwaivable defect. See 138 N.J. at 320. Second, if the Proposal Bond was actually intended to serve as a CoS in disguise, then there was no need for El

---

[6] The SFAA, likewise, did not mention this second paragraph.

18

Sol to provide a CoS and to argue that it should be treated as having been validly executed.  Third, there is no record evidence that this language was expected or intended to stand in the place of the CoS guarantee.

El Sol, in fact, conceded as much by stating during oral argument that "there was nothing at the moment that the CoS was signed that would bind Liberty to performing the full $70 million."  El Sol continued -- asserting that this concession should not be dispositive, because of "past practices and the way the world works."

## B.

El Sol argues that because the three documents were submitted by Liberty at the same time via the Surety2000 system under the same identifying number, the PoA authorizing Katherine Acosta to execute the 10% Proposal Bond should also apply to the CoS.  We cannot ignore the exclusive and prohibitive wording of the PoA, and we cannot agree with El Sol's argument before the Court that reading the respective language of each document is unfairly "parsing" the documents.  Although the PoA and CoS appear to have been filed at the same time and with a common identifying number, they are, as the Appellate Division found, "separate documents accompanying the Proposal Bond."  And, their having been filed together does not mean that the NJTA was obligated to transpose language of one document onto another.

19

C.

El Sol also argues that Liberty's "past practices" estopped the NJTA from rejecting El Sol's bid because the NJTA had previously accepted Liberty's PoA and CoS on thirteen occasions. We reject El Sol's argument that the NJTA cannot now refuse a defective bid because the NJTA accepted Liberty's defective bids in the past. As a general rule, "the doctrine of '[e]quitable estoppel is "rarely invoked against a governmental entity."'" Meyers v. State Health Benefits Comm'n, 256 N.J. 94, 100 (2023) (alteration in original) (quoting Middletown Twp. PBA Local No. 124 v. Township of Middletown, 162 N.J. 361, 367 (2000)). This is especially true when the application of the doctrine would "hinder or prejudice essential governmental functions." See Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954).

As we made clear in Meadowbrook, preserving the "fairness" of competitive bidding and avoiding the impression of "favoritism" is nothing short of essential in assiduously maintaining the "integrity" of the bidding process -- and we cannot deviate from those principles now.

We also decline to endorse the notion that the NJTA's Legal Department had the option of ignoring this defect -- or allowing Liberty to cure the defect in El Sol's bid -- once it came to the NJTA's attention. And we cannot agree with the Appellate Division that Liberty's subsequent "offer to modify the

20

language of the PoA" appropriately "address[es] this issue." Meadowbrook makes clear that this is not the type of mistake that can continue to be ignored or that Liberty can be allowed to cure.

Once the NJTA realized, in July 2024, that El Sol had submitted a bid without a validly executed CoS from Liberty, it was legally bound to apply the law and, at the same time, duty-bound to amend the Specifications in such a way that this situation would not recur -- and it did so. Had the NJTA chosen to ignore the defect, once it was brought to its attention by the Legal Department, or to allow Liberty to cure the defect, the NJTA would have shown inappropriate favoritism to both El Sol and Liberty vis-a-vis other bidders -- including Sanzari, who had submitted a validly executed CoS -- and, in so doing, it would have violated our decision in Meadowbrook.

Moreover, there is no evidence in the record to show that the NJTA was aware of Liberty's defect in the thirteen prior bids or that it acted in bad faith when it rejected El Sol's defective bid. The NJTA made no mention of these prior bids in its July 29 memorandum identifying the defect in El Sol's bid, and Liberty only informed the NJTA of the thirteen prior bids in a letter approximately one month later. The NJTA represented, at oral argument, that it had "missed" this issue in the past ("There were some adjustments to the bid process where it was missed."). Accordingly, the thirteen prior bids do not

demonstrate that the CoS from Liberty included in El Sol's bid was in an acceptable form at the time of bidding or that the NJTA acted in bad faith rather than in an effort to ensure that this defect would not perpetuate itself.

D.

Finally, El Sol argues in the alternative that the Specifications under consideration at the time of the bidding did not require that a PoA authorize the CoS. That reading of the Specifications is reasonable. But that does not mean that a validly executed CoS was not required -- it was. For instance, during oral argument, the NJTA stated that, as long as the signature had been authenticated, Liberty's CEO could have validly executed the CoS: "[I]f there was some indicia as to the authenticity of the [CEO's] signature, then that would be acceptable." But an authenticated signature of the CEO was not affixed to the CoS; instead, Acosta's signature was affixed, and the PoA expressly designated Acosta to sign only the Proposal Bond -- not the CoS or anything else.

E.

We hold that El Sol has failed to satisfy its burden of proving that the NJTA acted in an arbitrary, capricious, and unreasonable manner by relying upon the language of the submitted documents and by following the dictates of our precedent in Meadowbrook in treating a requisite yet unauthorized CoS as

22

a "material defect that can be neither waived nor cured." 138 N.J. at 320. Liberty took the position, in communications with the NJTA on the date of the August 27 Board Meeting, that the "deficiency" at issue was "immaterial"; our binding precedent instructs otherwise.

In summary, and pursuant to the three inquiries we undertake when we review whether agency decisions are arbitrary, capricious, and unreasonable, we cannot find that (1) by following Meadowbrook, the NJTA violated the law; (2) by reading the documents as they were submitted, the NJTA strayed from the record; and (3) by protecting the integrity and fairness of the competitive process, the NJTA acted in a manner that was inconsistent with legislative policy. We recognize that the result compelled by precedent comes with the unfortunate collateral consequence of a nearly ten-million-dollar increase to the price of the project from what El Sol had proposed. But we have already held in Meadowbrook that such a compromise to the integrity of the competitive process cannot be countenanced, id. at 325 ("[T]he integrity of the bidding process is more important than the isolated savings at stake."), and we see no reason to overrule this precedent.

Binding precedent simply does not provide, at the time of bidding, the leeway that El Sol seeks. Once that door is opened, it is difficult to shut.

23

V.

For the foregoing reasons, we reverse the judgment of the Appellate Division.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, and NORIEGA join in JUSTICE HOFFMAN's opinion. JUSTICE FASCIALE filed a dissent, in which JUSTICE PIERRE-LOUIS joins.

In the Matter of Protest
Filed by El Sol Contracting
and Construction Corp.,
Contract T100.638.

JUSTICE FASCIALE, dissenting.

The bid specifications in existence when El Sol bid on the project did not require that a Power of Attorney (POA) accompany a Consent of Surety (COS). And El Sol's bid bond packet, especially the COS, was entirely valid. Common sense tells us that the New Jersey Turnpike Authority (NJTA) knew that for two reasons. First, after Liberty Mutual's submission, the NJTA substantively changed the specifications to require, for the first time, that a POA accompany a COS. If the applicable specifications already imposed such a requirement, then there would be no reason to revise them. Second, the NJTA indisputably accepted identical bid bond documents from Liberty Mutual on thirteen other projects over the course of two years without ever suggesting that its submissions were deficient or requiring Liberty Mutual to provide a POA that accompanied a COS. The NJTA therefore knew the COS here was valid. Yet, even though those two points demonstrate that El Sol's bid was not fatally defective, the NJTA nevertheless disqualified El Sol -- after changing the specifications -- for purportedly submitting a "defective" COS.

The NJTA's disqualification of El Sol is arbitrary, capricious, and unreasonable, and its findings are not supported by credible evidence in the record. And unfortunately, it will cost taxpayers approximately $10,000,000.

I therefore dissent and would affirm the Appellate Division's well-reasoned judgment.

El Sol, through its surety Liberty Mutual, complied with Section 102.08 of the 2016 Standard Specifications in effect when it submitted its bid to the NJTA. As required by Section 102.08, El Sol provided a Proposal Bond, a POA, and a COS (collectively, Bid Bond Documents). Under the POA, Liberty Mutual's undisputed attorney-in-fact, Katherine Acosta, signed the Proposal Bond. Acosta also signed the COS. Both the COS and paragraph (b) of the Proposal Bond guaranteed that Liberty Mutual would provide a Contract Bond if the NJTA awarded the contract to El Sol. Liberty Mutual electronically submitted the Bid Bond Documents to the NJTA as a single instrument and cross-referenced the same Proposal Bond number (SNJ0530362021). The documents go together. Section 102.08 imposed no obligation to provide a Contract Bond at the time of the bid; the issuance of such a bond occurs only after the NJTA awards a contractor the contract. Like before, the NJTA raised no issues with the Bid Bond Documents here. Indeed, according to a letter from El Sol's attorney, on the day after El Sol submitted

2

its bid, the NJTA, at a post-bid meeting with El Sol and the engineer of record, indicated it would recommend El Sol get the job.

A month and a half after El Sol submitted its bid, the NJTA revised Section 102.08 and changed its long-standing rules. For the first time, it required that a POA must accompany a COS. El Sol memorialized in writing that a week after the revision, an El Sol representative spoke to the NJTA and learned that the NJTA planned to disqualify El Sol due to an "incurable error," but at that time, the NJTA would not divulge to El Sol any details. After the NJTA made that change, it disqualified El Sol, awarded the contract to another contractor, and obligated itself to pay an additional $10,000,000.

The NJTA incorrectly took the position that under the POA, Acosta had no authority to bind Liberty Mutual to the COS or to issue a Contract Bond at the appropriate time. It reasoned -- despite accepting identical bid documents from Liberty Mutual on thirteen prior projects; despite the lack of any existing obligation under the specifications when El Sol bid the job; and despite knowing that it had changed Section 102.08 substantively to impose new obligations -- that El Sol therefore failed to submit a COS "at all." There are several problems with that logic.

First, El Sol fully complied with the text of Section 102.08 that existed at the time of its bid, which required a POA only for the Proposal Bond.

3

Unlike the inapplicable revised Section 102.08, the specifications in existence when El Sol bid on the project imposed no obligation on El Sol to submit an additional POA for the COS. Acosta signed the POA that accompanied the Proposal Bond. And she signed the COS. The language of the Proposal Bond itself, paragraph (b), required issuing a Contract Bond if the NJTA awarded the job to El Sol. The POA and Proposal Bond accompanied the COS with the exact same surety number on all three documents and must reasonably be read together to mean that Liberty Mutual had bindingly undertaken to issue a Contract Bond if the NJTA awarded the contract to El Sol. Finally, the COS itself, in addition to the Proposal Bond, obligated Liberty Mutual to issue a Contract Bond if the NJTA awarded the job to El Sol. The NJTA's presupposition that there is no COS "at all" is misguided and more aligned with a belated attempt to apply the revised Section 102.08.

In fact, by its own definitions, the NJTA acknowledges that the Bid Bond Documents go together as one. In defining "Proposal Guaranty" in the definitions section of the 2016 Standard Specifications in effect at the time of this bid proposal, the NJTA states that a "Proposal Guaranty" is a "[s]ecurity in the form of a Proposal Bond or Letter of Surety, accompanying a Proposal, guaranteeing that Bidder will execute the Contract and furnish the required Contract Bond, if Bidder's Proposal is accepted." N.J. Tpk. Auth., Standard

4

Specifications 100-9 (7th ed. 2016), https://www.njta.com/media/2168/ njta_2016_standard_specifications.pdf (emphasis added).  Based on the NJTA's own definition, a POA's authority to bind a surety to the Proposal Bond necessarily gives that POA the authority to bind the surety to the future Contract Bond because the Contract Bond guarantee is encompassed within the Proposal Bond.

Second, the NJTA points to no case, statute, rule, or regulation that holds the COS (submitted in a form both frequently utilized and previously acceptable to the NJTA) is unenforceable without a POA.  The NJTA cannot rely on Meadowbrook because in that case the contractor submitted a COS four days late.  Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 312 (1994).  Here, El Sol submitted the Bid Bond Documents simultaneously and, unlike the contractor in Meadowbrook, did not attempt to cure a defect because none existed.  Ibid.  Mayo, Lynch & Associates is also inapplicable because there the contractor submitted a blank bid bond and a bid without a COS.  Mayo, Lynch & Assocs., Inc. v. Pollack, 351 N.J. Super. 486, 489 (App. Div. 2002).  In DeSapio, the surety's letter contained qualifications on its ability and willingness to issue contract bonds.  DeSapio Constr., Inc. v. Township of Clinton, 276 N.J. Super. 216, 218-19 (Law Div. 1994).  And in L. Pucillo & Sons, the contractor submitted a COS that covered only one of its

5

three bids. <u>L. Pucillo & Sons, Inc. v. Township of Belleville</u>, 249 N.J. Super. 536, 541 (App. Div. 1991). None of those cases hold that a COS is unenforceable without a POA.

Third, there is no credible evidence to support the NJTA's belated position that it "lacked any assurance" that Liberty Mutual was bound by the COS it submitted. Within hours of learning about the NJTA's "concern," neither Liberty Mutual nor El Sol stated the COS was invalid, and they did not submit other documents to cure the so-called defect. That is because the NJTA uniformly had accepted it before and there was no defect. Instead, in an August 27, 2024 letter, Liberty Mutual relied on the Bid Bond Documents, explained that the single electronic submission contained the same Proposal Bond number, and strenuously confirmed Acosta had authority to execute all the documents, especially the COS. The August 27 letter provides further evidence that El Sol steadfastly maintained that its Bid Bond Documents, especially the POA and the COS, were valid. In the letter, Liberty Mutual explained to the NJTA that "<u>if</u> the Law Department determined at some point that [the NJTA] had concerns with the language included in the [POA], [the NJTA] could have allowed for the bidder to correct the immaterial defect such that Liberty [Mutual] could amend the POA to address the [NJTA's] perceived concern." (emphasis added). A fair reading of the letter reflects that El Sol

6

and Liberty Mutual did not share the NJTA's "perceived concern." But solely to avoid any "delay" or end "any further debate" about the validity of the POA, and while contesting the need to, Liberty Mutual offered to amend the POA -- not because it or El Sol believed there was a defect. Looking at the August 27 letter in <u>context</u>, neither Liberty Mutual nor El Sol submitted an amended POA because one was entirely unnecessary. Liberty Mutual considered the NJTA to have perceived a deficiency, and one that was immaterial, but did not agree with such a perception. Interestingly, none of the other bidders here protested.

Finally, there is no reason for me to reach El Sol's contention that prior dealings between the NJTA and Liberty Mutual require an affirmance. My reference to them simply shows why the NJTA belatedly changed the rules and acted in an arbitrary, capricious, and unreasonable manner.

I would affirm the Appellate Division.