**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1411-24

PROTEST FILED BY B&L TIRE
SERVICE INC., T/A B&L
TOWING REGARDING
PREQUALIFICATION OF NOLL
BROTHERS INC. FOR ROUTINE
TOWING SERVICES IN ZONE 10
ON THE GARDEN STATE
PARKWAY.

_____

Submitted December 8, 2025 – Decided March 11, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the New Jersey Turnpike Authority.

Fox Rothschild LLP, attorneys for appellant Noll Brothers Towing, LLC (Fruqan Mouzon and Bridget Sykes on the briefs).

Decotiis Fitzpatrick Cole & Giblin LLP, attorneys for respondent New Jersey Turnpike Authority (John Profita and Hannah Cunning Valente, on the brief).

PER CURIAM

Noll Brothers Inc. ("Noll"), a towing company, appeals from a December 3, 2024 final decision of respondent the New Jersey Turnpike Authority's ("Authority"), rescinding Noll's prequalification status to submit a bid to perform towing services on a portion of the Garden State Parkway ("GSP"). Because the Authority's determination relied upon findings and conclusions that were not supported by substantial evidence in the record, we reverse and remand.

I.

The relevant facts are not in dispute, except where specifically mentioned. On August 16, 2022, the Authority issued a Prequalification of Contractors for Routine Towing Services on the New Jersey Turnpike and Routine Towing Services and Emergency Services on the Garden State Parkway to provide towing services within Zone 10 of the GSP.

Prequalification candidates were required to meet criteria outlined in section III of the Authority's prequalification document,[1] which provided in relevant part:

> A. Experience of Applicants/Personnel for Services
>
> 1. Applicant must have a minimum of three (3) years of general towing

---

[1] The prequalification criteria are found in section III of the preprinted form completed by Noll, entitled "Prequalification Applicant Information."

experience at the [g]arage [f]acility for which this [a]pplication is submitted, and a <u>minimum of three (3) years towing experience at the [g]arage [f]acility on one or more of the following Interstate highways within New Jersey: I-80, I-280, I-287, I-295, I-195, I-78, I-676, New Jersey State Routes 18, 30, 40, 50, 72 and 47, the Atlantic City Expressway, the New Jersey Turnpike or the [GSP]</u>. The Authority may also consider any other experience, within the past five years, as a towing contractor for the New Jersey State Police. At the discretion of the Authority, the requirement of three (3) years of towing experience at that [g]arage [f]acility may be satisfied by similar towing experience at another location.

. . . .

D. Garage Facility

. . . .

FOR ROUTINE TOWING SERVICES AND EMERGENCY SERVICES ON THE [GSP] (only)

6. <u>The [g]arage [f]acility must be capable of safely storing at least fifty (50) passenger vehicles and one (1) bus</u>. <u>The [g]arage [f]acility must also be zoned accordingly to allow for these storage requirements.</u> Satellite (off-site) storage yards will not be considered. All storage must be at the [g]arage [f]acility listed on the [a]pplication. Under no circumstance will patron's vehicles be stored on city streets or in an unsecured location. . . .

[(Emphasis added).]

Noll sought prequalification by submitting a timely application, and in January 2023, the Authority inspected Noll's garage facility and determined that it satisfied the prequalification requirements.[2] Noll was subsequently advised via letter from the Authority's Director of Procurement and Materials Management that it was prequalified to submit a bid for services. Noll had been operating as a towing business since 1976, servicing both private customers and municipalities, and maintains a tow facility in Iselin, Woodbridge Township.

Bidding for the towing services opened on August 1, 2024, at which time prequalified applicants were able to ascertain the identity of competing bidders. The Authority subsequently issued a request for bids, which were received and publicly opened on August 1, 2024. Among the companies submitting bids were Noll and B&L Tire Service, Inc. ("B&L").

Shortly thereafter, B&L protested Noll's prequalification status, asserting it was not a responsive bidder because "Noll abjectly fail[ed] to meet [the] minimum of three (3) years towing experience on any of the listed highways or with the New Jersey State Police," and "Noll's storage facility is deficient and

___

[2] The inspector of Noll's facility was William G. McDonough, the manager of Emergency Services and members of his staff.

fails to meet the [Authority's] [p]requalification [r]equirements [of safely storing at least fifty vehicles and one bus]."[3]

B&L claimed Noll's facility was inadequately zoned to accommodate fifty passenger vehicles and one bus, as it was zoned for "police towing [and fifty vehicle?] car storage."

Following notice to Noll and B&L, the Authority convened a hearing on B&L's protest of Noll's prequalification before hearing officer John La Bella, the Authority's Director of Toll Collections.[4] The hearing commenced with McDonough testifying regarding the basis upon which Noll's prequalification was approved, followed by testimony from the protester, B&L and then Noll.

More particularly, McDonough testified repeatedly that Noll's storage facility satisfied the prequalification requirement based on his inspection.

Mark Margiotta, B&L's representative, challenged Noll's ability to meet the prequalification requirement as to zoning, arguing "what wasn't pointed out in the testimony, and what is contained in the prequalification requirement, is that the garage facility be zoned accordingly to allow what is required, [fifty]

---

[3] Under N.J.A.C. 19:9-2.12, "[a]ny actual or prospective bidder . . . who is aggrieved in connection with the solicitation . . . of a contract or its prequalification status or classification may protest to the Authority."

[4] The hearing was informal and non-adversarial; witnesses were neither sworn nor cross-examined, and the rules of evidence did not apply.

vehicles and a bus." He further argued Noll's zoning permit clearly stated that it's zoned for police storage, and did not have the capacity at its facility to add fifty cars and a bus and satellite locations were impermissible. B&L further challenged Noll's towing experience through the testimony of its owner, Sean Cody, who testified that on the GSP alone, B&L tows "approximately 30 to 40 vehicles" on a single weekend.

Jeffrey Noll, owner of Noll, also testified about Noll's towing experience, stating that Noll had "occasionally" towed on the GSP, New Jersey Turnpike, and I-287, and that the last such occurrence was about a month before the hearing, when the Woodbridge Police Department requested Noll tow a vehicle from the GSP that had crashed after a high-speed police chase. Noll confirmed he had the ability to store a minimum of fifty cars and room for additional buses for the Parkway, and clarified that he is "maintaining a business right now running used cars. But in the event [that he] got the Parkway [contract], [he] own[s] [eleven] acres in Old Bridge for [his] other stuff."

On December 2, 2024, the hearing officer issued a decision recommending rescission of Noll's prequalification status, effectively removing Noll from consideration for the Authority's towing services contract for which it had submitted a bid. The hearing officer found Noll lacked the requisite three-years' experience, stating that Noll's towing from I-287 was "limited, sporadic and

incidental to [Noll's] municipal towing services," and that Jeffrey Noll's testimony regarding his own experience "falls far short of three years['] experience on the [GSP]." He further concluded that "while Noll may have significant experience at the municipal level, it lacks experience necessary to tow on a major, limited access high-speed roadway such as the [GSP]."

The hearing officer also found that while McDonough determined Noll's storage facility was adequate for prequalification, Noll in fact "had not possessed the necessary zoning approval to use the [s]torage [a]rea in the manner required by the [p]requalification [d]ocuments." More particularly, the hearing officer found:

> the zoning permit issued by the Township of Woodbridge limited Noll's storage capacity to "police storage and [fifty] car storage." . . . . Given Noll's municipal towing contract with Woodbridge, the reference to "police storage" can only relate to vehicles towed at the request of the Woodbridge Police Department. Thus, only "[fifty] car storage" was left to accommodate vehicles towed from or at the direction of another jurisdiction—such as the Authority here. Accordingly, [he found] that Noll did not have zoning approval to store a bus, in addition to [fifty] passenger vehicles, as required by the [p]requalification [d]ocuments.

On December 3, 2024, the Authority's Executive Director adopted the hearing officer's recommended decision, without modification, and invalidated Noll's prequalification status. Noll appealed.

7

II.

Our State Constitution provides for judicial review of administrative agency actions as of right. In re Protest Filed by El Sol Contr. & Constr. Corp., 260 N.J. 362, 373 (2025) (citing N.J. Const. art. VI, § 5, ¶ 4); see also R. 2:2–3(a)(2). Although our review of an administrative agency's legal conclusions is de novo, our role in reviewing agency actions is otherwise limited. Ibid. (first citing Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992); then citing In re Musick, 143 N.J. 206, 216 (1996)).

> The judicial role is restricted to four inquiries: (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994).]

"The 'fundamental consideration' in reviewing agency actions 'is that a court may not substitute its judgment for the expertise of an agency . . . . '" In re Distrib. of Liquid Assets upon Dissolution of Reg'l High Sch. Dist., No. 1, 168 N.J. 1, 10 (2001) (quoting Williams v. Dep't of Hum. Servs., 116 N.J. 102, 107 (1989)). "When an agency's decision meets those criteria, then a court owes

substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). Therefore, "[a]n administrative agency's final [] decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28. "Deference controls even if the court would have reached a different result in the first instance." Id. at 28.

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." Lavezzi v. State, 219 N.J. 163, 171 (2014) (alteration in original) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)). "Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances." Worthington v. Fauver, 88 N.J. 183, 204 (1982) (citing Bayshore Sewerage Co. v. Dep't, Env't, Prot. 122 N.J. Super. 184, 199 (Ch. Div. 1973)). "Only when the agency's findings are clearly mistaken and 'so plainly unwarranted that the interests of justice demand intervention and correction' should a reviewing court 'make its own findings and conclusions.'" In re Adamar of N.J., Inc., 401 N.J. Super. 247, 265 (App. Div. 2008) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)); see also Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587-88 (2001).

Prequalification requirements and bidding specifications are the type of matters within the Authority's area of technical expertise and are thus entitled to deference. See In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 593 (App. Div. 1995) ("Treasurer's decisions as to responsibility of the bidder and bid conformity are to be tested by the ordinary standards governing administrative action."). "The underlying and foundational purpose of public bidding in New Jersey is 'to guard against favoritism, improvidence, extravagance and corruption, and . . . to secure for the public the benefits of unfettered competition.'" El Sol, 260 N.J. at 374 (quoting Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., Dep't of Treasury, 99 N.J. 244, 256 (1985) (modification in original)). "The conditions and specifications must apply equally to all prospective bidders. Otherwise, there is no common standard of competition." Hillside Twp., Union Cnty. v. Sternin, 25 N.J. 317, 322 (1957).

Likewise, a "bid[] must not materially deviate from the specifications and requirements set forth by the local contracting unit." Ernest Bock & Sons-Dobco Pennsauken Joint Venture v. Twp. of Pennsauken, 477 N.J. Super. 254, 264 (App. Div. 2023) (citing Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 314 (1994)). Therefore, "[a]ny material departure

10

invalidates a nonconforming bid as well as any contract based upon it."  Ibid. (citing Meadowbrook, 138 N.J. at 314); see also Hillside, 25 N.J. at 323.

The Authority's procurement of routine towing services is controlled by N.J.A.C. 19:9-2.13, the objective of which is to "establish procedures for the award of contracts for routine towing services on the . . . [New Jersey] Turnpike and [GSP], to be provided on a rotational basis, utilizing a competitive bid process open to prequalified bidders," with "[o]nly bids submitted by contractors who have been prequalified pursuant to a prequalification process . . . considered."  N.J.A.C. 19:9-2.13(b), (c).  The code further provides that:

> [t]he criteria to be used by the Authority in determining prequalification shall include the following, the specific requirements of which shall be set forth in the request for prequalification:  reliability, experience, response time, . . . ; equipment; location and condition of storage facilities to safeguard the personal property of patrons and their towed and stored vehicles; . . . and such other factors as the Authority may deem relevant and which shall be specified in the request for prequalification.
>
> [N.J.A.C. 19:9-2.13(d).]

The Authority, however, "does not have 'unbridled power to reject bids, even where such right is served in the invitation for bidding' because such power would violate public policy and competitive-bidding laws."  George Harms, 137 N.J. at 20 (quoting Cardell, Inc. v. Woodbridge, 115 N.J. Super. 442, 450 (App. Div. 1971)).

11

III.

Before us, Noll raises two principal arguments.  First, it challenges the Authority's decision to "count" as experience towing services on some but not all roadways and routes, including "well-traveled highways . . . Route[s] 1 [and] 9" and to vacate Noll's prequalification on the basis of inexperience operating on Routes 13, 30, 40, 50, 72 or 47.  Second, Noll contests the Authority's finding it was unqualified based on its interpretation of the Woodbridge's zoning permit, which stated that Noll was authorized for "police storage <u>and</u> fifty (50) passenger vehicles"; and the hearing officer's conclusion that Noll would violate the zoning ordinance if it were to house fifty cars and a bus.  We address these arguments seriatim.

A.

Noll maintains the Authority's exclusion of Routes 1 and 9 from the list of roadways on which a bidder must have sufficient towing experience and its finding that towing from I-287 was insufficient to satisfy the prequalification's experience requirement is not supported by substantial credible evidence.  Noll highlights its more than forty years of experience picking up and towing vehicles from Routes 1 and 9, "dealing consistently with congestion, speeding vehicles, and the restriction on access from either direction," as indicative of its experience and qualifications.

12

Additionally, Noll maintains that Routes 1 and 9 are comparable to Route 18, which is expressly included in the Authority's prequalification list, and further argues that its experience on Routes 1 and 9 "should count for something."

On the other hand, the Authority urges us not to be persuaded by Noll's arguments, which are rooted in the similarity of Routes 1 and 9 to those mentioned in the prequalification list, arguing instead that it is "certainly in the best position to determine what qualifications are necessary to provide routing towing services." And, "[p]roviding routine towing services on the [GSP] is a highly dangerous task, and is critical to the efficient functioning of the Authority." Relying on In re Distrib. of Liquid Assets, 168 N.J. at 10-11, the Authority posits that its prequalification requirements and bidding specifications are the type of matters within the Authority's area of technical expertise and thus are entitled to deference. And, it concludes that Noll's recitation of its towing experience on Routes 1 and 9 is "of no moment, as these roadways were not on the list of roadways enumerated in the Prequalification Documents."

The hearing officer rejected Noll's argument highlighting its experience on Routes 1 and 9, concluding that "none of those roadways were on the list of enumerated roadways in the [p]requalification [d]ocument."

On this point, we are satisfied that the Authority's prequalification criteria requiring towing experience on specifically enumerated roadways falls within the scope of its authority and reflects a proper exercise of its discretion. Stated differently, the Authority is well within its right to determine the criteria necessary to achieve its ultimate goal of contracting with qualified applicants. See Campbell, 169 N.J. at 588 (citing Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)) (granting deference to agency expertise on technical matters); In re N.J. Transit, 473 N.J. Super. 261, 275-76 (recognizing the Authority's broad discretion in its decision-making). Such an exercise of discretion includes establishing "requirements . . . in bidding specifications [that] by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding." Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 412 (1975) (upholding agency authority to set and enforce material bid conditions as a means to promote fairness and integrity in public contracts).

Nevertheless, we note that the prequalification criteria expressly permits the Authority to also consider any experience, within the past five years, as a towing contractor for the New Jersey State Police. Although Noll does not assert experience particularly with the State Police, he does explain his lengthy experience towing for local police on roadways including the Turnpike. We are

14                                                                                    A-1411-24

satisfied that a broad reading of the experience provision of the prequalification criteria is warranted, consistent with the Legislative purpose of promoting fairness and integrity in the awarding of public contracts. Ibid. We further recognize that to conclude otherwise, would be to the perpetual advantage of those companies who are already qualified, chilling competition and effectively removing from consideration other tow operators no matter how long they have been in operation; the proverbial cat chasing its tail scenario.

We, therefore, part ways with the Authority's determination Noll's towing experience on I-287 was insufficient to satisfy the prequalification requirements. On this point, we discern that the hearing officer's reasoning and conclusion reflect too narrow of a reading of the experience criteria and imposed additional, unwarranted requirements.

In addressing this issue, the hearing officer determined that:

> the fact that I-287 may traverse one or more of the local municipalities for which Noll's tows does not evidence three (3) years' towing experience on I-287. At best, even assuming Noll provided any towing service on I-287 as a result of his municipal contracts, his experience on I-287 would be limited, sporadic and incidental to Noll[']s municipal towing services. Indeed, that tangential experience does not satisfy the requirements set forth in the [p]requalification [d]ocuments.

Jeffrey Noll, however, testified that in the forty-plus years of the company's history, it has rescued vehicles from the GSP, Turnpike, and I-287,

thereby satisfying the experience requirement. In addition, he further testified that Noll has the requisite number of spaces available to store the minimum level of cars with room for additional buses that satisfied the prequalification requirements.

The hearing officer surmised that Noll had only limited, sporadic and incidental experience towing on I-287, which he then categorized as "tangential" and therefore insufficient to satisfy the three years' towing experience required in the prequalification documents. We note, however, that the prequalification document is silent as to the precise definition of experience necessary; and does not quantify or otherwise elaborate on the extent of towing experience needed to satisfy this criterion. In other words, nowhere in the record before us does the Authority define experience in terms of number of hours, days, months or years needed. Under these circumstances, the hearing officer's conclusion Noll's experience was insufficient because it was "tangential" is without merit. Therefore, in applying the deference we must accord to our review of agency determinations, we are satisfied that the Authority's adoption of the hearing officer's reasoning and conclusion regarding Noll's insufficient experience on I-287 lacks support in the record.

A-1411-24

B.

We next turn to Noll's final argument that the Authority abused its discretion in concluding that it did not have "the necessary zoning approval to use [its] [s]torage [a]rea in the manner required by the [p]requalification [d]ocuments."

The Authority requires its prequalification applicants to have a garage facility, "capable of safely storing at least fifty [] passenger vehicles and one [] bus," and the facility "must . . . be zoned accordingly to allow for these storage requirements. . . . "

In its decision, the Authority determined that Noll's facility met its standards but was not zoned in accordance with the prequalification requirements. The hearing officer stated:

> [w]hile Noll's [s]torage [a]rea may have met the physical requirements for storage capacity, I cannot find that Noll unequivocally possessed the necessary zoning approval to use the [s]torage [a]rea in the manner required by the [p]requalification [d]ocuments. Specifically, the zoning permit issued by the Township of Woodbridge limited Noll's storage capacity to "police storage and [fifty] car storage."

And, further that:

> Given Noll's municipal towing contract with Woodbridge, the reference to "police storage" can only relate to vehicles towed at the request of the Woodbridge Police Department. Thus, only "[fifty] car storage" was left to accommodate vehicles towed from

17

or at the direction of another jurisdiction - such as the Authority here. Accordingly, I find that Noll did not have zoning approval to store a bus, in addition to [fifty] passenger vehicles, as required by the [p]requalification [d]ocuments.

[(Emphasis added).]

Although the Authority found that Noll met the "physical requirements for storage capacity," consistent with the testimony provided by McDonough,[5] it misconstrued the language of the zoning permit, which states "POLICE TOWING & 50 CAR STORAGE," effectively assuming Noll could only accept storage for the Woodbridge Police Department. The prequalification specification provides that the garage facility "must also be zoned accordingly to allow for these storage requirements." In our view, Noll has the capability of storing fifty vehicles and one bus, as required by the prequalification standards. Thus, Noll satisfies the spatial and zoning requirements.

Because we conclude the Authority's determination that Noll lacked the requisite experience, storage capability and necessary zoning approval is not based on substantial evidence in the record, we reverse the decision to rescind Noll's prequalification status. Herrmann, 192 N.J. at 27-28.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

---

[5] McDonough testified based upon his inspection of Noll's facility that it met the prequalification requirement for storage capability for fifty cars and one bus.

A-1411-24